**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KENALL MANUFACTURING COMPANY,** | |
| **Plaintiff,** | |
| **v.** | Case No. 1:17-cv-04575 |
| | Honorable Judge G. Feinerman |
| **COOPER LIGHTING, LLC; EATON CORPORATION,** | |
| **Defendants.** | |

**DEFENDANTS COOPER LIGHTING, LLC'S AND EATON CORPORATION'S
OPPOSITION TO PLAINTIFF'S RULE 12(C) MOTIONS FOR JUDGMENT OF
<u>PATENT INFRINGEMENT AND BREACH OF CONTRACT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

      I.     PLAINTIFF FAILS TO STATE A VIABLE CLAIM, LET ALONE
           ESTABLISH PATENT INFRINGEMENT UNDER RULE 12(C) .................. 4

            A.     Plaintiff's Patent Infringement Claims Are Barred By The License
                   Agreement ..................................................................................................... 4

            B.     Plaintiff Has Not Addressed The Essential Elements Of Patent
                   Infringement .................................................................................................. 7

      II.    PLAINTIFF HAS NOT SET FORTH OR ESTABLISHED THE
           ELEMENTS FOR BREACH OF CONTRACT ............................................. 9

CONCLUSION .................................................................................................................. 14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen Engineering Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002)........................................................................8, 9

*Brazdo v. Illinois Dept. of Prof. Regulation*,
  No. 94 C 134, 1997 WL 80952 (N.D. Ill. Feb. 21, 1997)........................................3

*Burkhart v. Wolf Motors of Naperville, Inc.*,
  61 N.E.3d 1155 (Ill. Ct. App. 2016) ........................................................................10

*Cascades Computer Innovation, LLC v. Samsung Electronics Co. Ltd.*,
  70 F.Supp.3d 863 (N.D. Ill. 2014) ........................................................................5

*Corebrace LLC v. Star Seismic LLC*,
  566 F.3d 1069 (Fed. Cir. 2009)........................................................................7

*Delta Consulting Group, Inc. v R. Randle Construction, Inc.*,
  554 F.3d 1133 (7th Cir. 2009) ........................................................................12

*Durkin v. Equifax Check Svcs., Inc.*,
  No. 00 C 4832, 2003 WL 22078331 (N.D. Ill. Sept. 8, 2003)................................4

*Durkin v. Equifax Check Svcs., Inc.*,
  No. 00 C 4832, 2004 WL 725461 (N.D. Ill. Mar. 31, 2004) ................................10

*Ercor Corp. v. Northern Building Co.*,
  2010 WL 1729482 (N.D.Ill. April 27, 2010) ........................................................................4

*General Talking Pictures Corp. v. Western Electric Co.*,
  59 S.Ct. 116 (1938)........................................................................6

*Graco, Inc. v. Binks Mfg. Co.*,
  60 F.3d 785 (Fed. Cir. 1995)........................................................................8, 9

*Impression Products Inc. v. Lexmark International Inc.*,
  581 U.S. __, 137 S. Ct. 1523 (2017)........................................................................6

*JVC Kenwood Corp. v. Nero, Inc.*,
  797 F.3d 1039 (Fed. Cir. 2015)........................................................................4

*Lisle Corp. v. Edwards*,
  777 F.2d 693 (Fed. Cir. 1985)........................................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)..............................................................................8, 9

*McCoy v. Mitsuboshi Cutlery, Inc.*,
    67 F.3d 917 (Fed. Cir. 1995)...................................................................................4

*Premiere Digital Access, Inc. v. Central Telephone Comp.*,
    360 F.Supp.2d 1161 (D. Nev. Feb. 22, 2005) ......................................................10

*R.R. Donnelley & Sons Co. v. Vanguard Transp. Sys., Inc.*,
    641 F.Supp.2d 707 (N.D. Ill 2009) .......................................................................12

*Seoul Laser Dieboard Sys. Co., Ltd. v. Computerized Cutters, Inc.*,
    No. 15-cv-1212-H-DHB, 2015 WL 12081336 (S.D. Cal. Dec. 22, 2015) ...........5, 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..............................................................................8

*Yale Dev. Co., Inc. v. Oak Park Trust & Savings Bank*,
    26 Ill.App.3d 1015 (Ill. Ct. App. 1975) ...............................................................11

## INTRODUCTION

Relying on a conclusory complaint and cherry-picked contract provisions, Plaintiff seeks a complete victory on the merits as to patent infringement and breach of contract. Such relief at this stage is rarely, if ever, granted because it robs Defendants entirely of the judicial process. This case is no exception; Plaintiff's motions are both procedurally and substantively deficient.

As to patent infringement, Plaintiff fails to state a viable claim, let alone establish infringement. The crux of Plaintiff's assertion is that pursuant to a 2007 License Agreement, Defendants are precluded from contesting infringement. Plaintiff's argument is a tacit admission that the License Agreement remains in force. Under that agreement, Defendants have a worldwide, non-exclusive license covering the "Subject Products and any other products within the scope of the Subject Patents." Plaintiff's complaint, however, concedes that it "has not at any time asserted, and does not now assert, the Subject Patents against [Defendants'] products other than the Subject Products." The Subject Products are licensed and patent infringement does not apply to licensed products. What's more, Plaintiff fails to even recite, let alone establish, its burden as to patent infringement. Even if it stated a viable claim, which it has not, Plaintiff alone bears the burden of proving infringement by comparing the construed claims of the patent to the accused devices. This, of course, is a heavily fact dependent determination and Defendants affirmatively deny any infringement. Plaintiff's Rule 12(c) motions as to patent infringement are duly without merit.

With respect to breach of contract, Plaintiff's Rule 12(c) motions are similarly misguided. Plaintiff again ignores Defendants' denials and attempts to skip to the end without providing Defendants the opportunity to present their side of the story. Indeed, Defendants deny any breach and there are a host of unaddressed facts, such as Plaintiff's own misconduct and delay, that weigh directly on the contract dispute. In short, Plaintiff has not, and cannot, meet the significant

burden required of a Plaintiff in the Rule 12(c) context at this early stage. This is a heavily contested dispute, and Plaintiff's motions should be denied.

## STATEMENT OF FACTS

This litigation stems from an earlier patent infringement action by Kenall against Cooper (the "Predicate Litigation"). (D.I. 1 at ¶ 2.) The Predicate Litigation was dismissed pursuant to an agreed upon Settlement Agreement in July 2007. (*Id.*; D.I. 1, Ex. A.) As part of the Settlement Agreement, Cooper specifically denied any infringement and the parties agreed to enter into a Confidential License Agreement (the "License Agreement"). (D.I. 1, Ex. A 1-2.)

In the License Agreement, Cooper was granted a worldwide, nonexclusive license to the "Subject Patents." (D.I. 1, Ex A at Ex. 3 ¶ 1.) The Subject Patents include U.S. Patent No. 6,984,055 (the "'055 Patent") and, in part, "any additional existing and future United States and foreign patents and applications ... claiming priority to U.S. Application No. 10/156,423." (D.I. 1 at ¶ 32.) This license grant extends to the "Subject Products ***and any other products within the scope of the Subject Patents***." (D.I. 1, Ex A at Ex. 3 ¶ 1 (emphasis added)).

The term of the License Agreement is until the expiration of the last-to-expire of the Subject Patents, unless the License Agreement is terminated earlier. (D.I. 1, Ex A, at Ex. 3 ¶ 11.) The License Agreement may be terminated earlier only for breach. (*Id.* at ¶ 12.) To terminate for breach, Kenall must provide Cooper with written notice. (*Id.*) However, Cooper may avoid the termination if it takes reasonable steps to remedy the breach based on such notice. (*Id.*)

On June 19, 2017, Kenall instituted this action alleging breach of contract and patent infringement. (D.I. 1.) Defendants[1] answered the Complaint on August 31, 2017, denying any

---

[1] Since the License Agreement was executed in July 2007, Cooper was acquired by Eaton Corporation. (D.I. 34 at ¶ 6.) Cooper remains a separate and independent subsidiary of Eaton, but sells product under both the Cooper and Eaton names. (*Id.*)

breach of contract and patent infringement. (D.I. 34.) Defendants concurrently filed a motion for judgment on the pleadings seeking dismissal of Kenall's patent infringement claim. (D.I. 35.) On September 8, 2017, Kenall filed Rule 12(c) Motions seeking judgment on its breach of contract and patent infringement claims.[2] Kenall does not allege that the License Agreement has been terminated, but in fact relies on the License Agreement for both its patent infringement and breach of contract claim. As to patent infringement, Kenall's assertion is limited to the Subject Patents and is against only Subject Products; in other words, it asserts infringement for products covered in the License Agreement. (D.I. 1 at ¶ 36.) As to breach of contract, Plaintiff improperly omits the voluminous evidence establishing that there was in fact no breach, that Defendants have been entirely cooperative and that Plaintiff's conduct resulted in this dispute. For the reasons discussed below, Kenall's Rule 12(c) Motions should be denied.

## STANDARD OF REVIEW

A Rule 12(c) motion aimed at disposing a case on the basis of the underlying substantive merits is reviewed under the same standard as is applied to summary judgment. *Brazdo v. Illinois Dept. of Prof. Regulation*, No. 94 C 134, 1997 WL 80952, at *2 (N.D. Ill. Feb. 21, 1997) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). Plaintiff's motions thus can only be granted if this Court determines that there are no genuine issues of material fact as to the alleged claims, which the moving party bears the burden to prove. At this stage, the Court may consider only the contents of the pleadings in making its determination. *Id.* The court must "construe all facts and draw(s) all reasonable inferences in the light most favorable to the non-

---

[2] Kenall filed four separate motions (D.I.'s 45, 48, 51, 54). Two motions seek a Rule 12(c) judgment for breach of contract, one against Cooper and one against Eaton. And, two motions seek a Rule 12(c) judgment for patent infringement, one against Cooper and one against Eaton. In the interest of brevity, Defendants address all four motions herein.

moving party. *Ercor Corp. v. Northern Building Co.*, 2010 WL 1729482, 2 (N.D.Ill. April 27, 2010) (citing *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir.2009)). Where, as here, a disputed issue of fact or such a disputed issue of fact could arise through discovery or the ordinary course of litigation, a Rule 12(c) motion should be denied. *Durkin v. Equifax Check Svcs., Inc.*, No. 00 C 4832, 2003 WL 22078331 (N.D. Ill. Sept. 8, 2003) (denying Rule 12 (c) motion where there was a genuine issue of material fact).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A VIABLE CLAIM, LET ALONE ESTABLISH PATENT INFRINGEMENT UNDER RULE 12(C)

#### A. Plaintiff's Patent Infringement Claims Are Barred By The License Agreement

The License Agreement grants Defendants a worldwide, non-exclusive license to all Subject Patents, including the asserted patents. This license extends to "the Subject Products and any other products within the scope of the Subject Patents." (D.I. 1, Ex. A at Ex. 3 ¶ 1).[3] Pursuant to the plain language of the License Agreement, ***any product of Defendants*** that is within the scope of the Subject Patents, including the patents-in-suit, is licensed. As such, Plaintiff's Rule 12(c) motions for a judgment on the merits of patent infringement should be denied because Plaintiff does not state a viable claim for patent infringement against Defendants.

It is black letter law that a claim of patent infringement cannot rely on products that are subject to a license. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995); *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1045 (Fed. Cir. 2015); *see also* Defendants'

---

[3] The distinction between "Subject Products" and "any other products" is relevant to the royalty provisions of the License Agreement. Specifically, only Subject Products are royalty bearing. *Id.*

4

Motion To Dismiss Under Rule 12(c) (D.I. 35).  Under the License Agreement, Defendants[4] have:

> a worldwide, nonexclusive license under the Subject Patents to make, to have made, to use, to have used, to offer for sale, to sell, to have sold, to export, to have exported, to import, and to have imported the Subject Products and any other products within the scope of the Subject Patents.

(D.I. 1, Ex. A at Ex. 3 ¶1.) Based on this unequivocal language, for the term of the License Agreement, all of Defendants' products that fall within the scope of the Subject Patents, including the patents-in-suit, are licensed.  (*Id.*)

Plaintiff concedes that it "has not at any time asserted, and does not now assert, the Subject Patents against Cooper products other than the Subject Products." (D.I. 1 at ¶ 36.)   This admission is fatal to any claim of patent infringement as Subject Products are within the clear scope of the license grant.  (D.I. 1, Ex. A at Ex. 3 ¶1.)  A valid license is a complete defense to patent infringement liability.  *Seoul Laser Dieboard Sys. Co., Ltd. v. Computerized Cutters, Inc.*, No. 15-cv-1212-H-DHB, 2015 WL 12081336, *6 (S.D. Cal. Dec. 22, 2015) (citing *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995)). Thus, even assuming the facts as pled by Plaintiff are true, Plaintiff has failed to state a viable claim for patent infringement.

Plaintiff attempts to circumvent this law, ostensibly arguing that Defendants' conduct of failing to mark, selling outside of certain time limitations, or failing to pay royalties, renders the

---

[4] The License Agreement was between Kenall and Cooper, however, Paragraph 3 of the License Agreement provides that the License is assignable upon the "sale by Cooper of all or substantially all of its assets of the business related to the Licensed Products," thereby also including Eaton as subject to the license.  In addition, since Cooper is the manufacturer and subject to the license, any downstream sales would not be subject to patent infringement claims under the doctrine of patent exhaustion.  *Cascades Computer Innovation, LLC v. Samsung Electronics Co. Ltd.*, 70 F.Supp.3d 863 (N.D. Ill. 2014) ("Under the doctrine of patent exhaustion, the initial authorized sale of a patented item terminates the patent holder's rights to that item, and the patent holder may not sue a downstream user of that item for infringement.").

accused product outside the scope of the License Agreement. Plaintiff relies primarily on *General Talking Pictures Corp. v. Western Electric Co.*, 59 S.Ct. 116 (1938), for this proposition. But that case, in fact, supports Defendants' position. *General Talking Pictures* involved a license for vacuum tube amplifiers that was expressly limited to "radio amateur reception, radio experimental reception and radio broadcast reception." *Id.* at 117. Defendant exceeded the scope of the license grant by selling product for commercial picture use, use that was specifically excluded from the license grant. *Id.* In contrast, here, Plaintiff concedes that at issue are only products that fall directly within the scope of the License Agreement.[5]

Paragraph 1 of the License Agreement provides Defendants with "a worldwide, nonexclusive license under the Subject Patents to make, to have made, to use, to have used, to offer for sale, to sell, to have sold, to export, to have exported, to import, and to have imported *the Subject Products and any other products within the scope of the Subject Patents*." (D.I. 1, Ex. A at Ex. 3 ¶ 1.) By Plaintiff's own admission, at issue here are only the Subject Patents and the Subject Products. (D.I. 1 at ¶ 36). Moreover, Plaintiff further concedes that the License Agreement remains in force by repeatedly relying on provisions such as the "No Challenge Clause." (*See* D.I. 45 at ¶¶ 33-52, D.I. 48 at ¶¶ 40-52, D.I. 51 at ¶¶ 38, 40, and D.I. 54 at ¶¶ 38, 40). Consequently, based on Plaintiff's own statements, the accused "Subject Products" are *within* the scope of the license grant. (*Compare* D.I. 1 at ¶ 36 *with id.*, Ex. A at Ex. 3 ¶ 1). Plaintiff's claim is therefore precluded as patent infringement cannot be asserted against licensed

---

[5] Plaintiff's reliance on *Impression Products Inc. v. Lexmark International Inc.*, 581 U.S. __, 137 S. Ct. 1523 (2017) is even further afield. In that case, the Supreme Court found all downstream users are licensed under the doctrine of patent exhaustion. The case does not support Plaintiff's attempt to assert both patent infringement and breach of contract for the same conduct.

products. *See, e.g., Seoul Laser Dieboard Sys. Co., Ltd.*, 2015 WL 12081336 at \*6; *Lisle Corp. v. Edwards*, 777 F.2d 693 (Fed. Cir. 1985).

Plaintiff's argument that Defendants allegedly failed to mark or sold certain products outside a specified timeframe are ***extrinsic*** and separate contractual obligations outside of the license grant of Paragraph 1. (D.I. 1, Ex. A at Ex. 3 ¶¶ 2, 9.) The Federal Circuit addressed a similar situation in *Lisle Corp. v. Edwards*. 777 F.2d at 694. In that case, the patentee alleged patent infringement claiming that the licensee's failure to mark, as per the license, excluded the accused product from the license. The Federal Circuit affirmed the district court's ruling that the marking requirement was a contractual obligation. *Id.* Because the license was still valid, the patentee was enjoined from asserting patent infringement. *Id.* The case of *Corebrace LLC v. Star Seismic LLC*, discussed in Defendants' motion also addresses a nearly identical fact pattern. *See* No. 2:08CV11DAK, 2008 WL 7071435, at \*5 (D. Utah July 18, 2008) *aff'd by Corebrace LLC v. Star Seismic LLC*, 566 F.3d 1069 (Fed. Cir. 2009) (Court found Defendant to be under an ongoing license agreement, which was itself a defense to infringement).

In short, Plaintiff cannot assert patent infringement against Subject Products because those products are, by definition, licensed. Other issues, such as marking and timing, are contractual restrictions only. (*Compare* D.I. 1, Ex. A at Ex. 3 ¶¶ 2, 9 *with id.* at ¶ 1.) Plaintiff's complaint therefore relates only to ***contractual limitations not license limitations***. Because Plaintiff has failed to state a viable claim for patent infringement, its Rule 12(c) motion for a finding of patent infringement on the merits should be denied.

### B. Plaintiff Has Not Addressed The Essential Elements Of Patent Infringement

Plaintiff's attempt to get a judgment on the merits at this early stage also fails because Plaintiff has not and cannot meet its burden of establishing patent infringement. A bedrock principal of patent law is that infringement can only be established by comparing the construed

7

claims of a patent to the accused product. Here, Plaintiff does not even state this standard, let alone perform this analysis.

To prove infringement, the plaintiff alone bears the burden of proof to show the presence of every element or its equivalent in the accused device. *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1301 (Fed. Cir. 2011). The first step of any infringement analysis is claim construction. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Claim construction involves determining the meaning and scope of the patent claims. *Id.* The second step in an infringement analysis is comparing the properly construed claims to the accused device. *Id.*

Here, Plaintiff does not even try to meet this burden. Neither Plaintiff's Complaint nor its Motions contain any evidence that the accused products infringe the asserted patents. To the contrary, as explained above, the Complaint makes clear that at issue are only Subject Products, which are clearly licensed and thus cannot infringe. Moreover, Plaintiff does not compare the accused Subject Products to the construed patent claims. Plaintiff thus has not met the threshold minimum showing that there is and could be no disputed issue of material fact regarding patent infringement. As the Federal Circuit has made clear, patent infringement can only be established by comparing the construed claims to the accused product. *Allen Engineering Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("the district court must construe the disputed limitations of all of the claims remaining in suit and must then compare each of those limitations, as construed, to the corresponding elements of the [accused product] to determine infringement."); *see also Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995) ("the entire omission of a claim construction analysis from the opinion, and the conclusory factual findings on infringement, each provide an independent basis for remand.")

Plaintiff's motion is further improper as it ignores Defendants' express denials of infringement. The Settlement Agreement explicitly acknowledges that Cooper denies that any of the Subject Products infringe the Subject Patents. (D.I. 1, Ex. A at 1.) Similarly, Defendants deny any infringement in the answer. (D.I. 34 at ¶¶ 70-88.) Plaintiff thus cannot establish patent infringement based on a conclusory Rule 12(c) motion. *Markman*, 52 F.3d at 976.

Plaintiff appears to rest its motion on the "No Challenge Clause" of the License Agreement.[6] This is a red herring. Plaintiff, not Defendants, alone bears the burden of proving infringement. Even if the No Challenge Clause was applicable in this context (which it is not)[7], that does not absolve Plaintiff of actually establishing infringement by presenting a comparison of the construed claims against the accused products. *See, e.g, Allen Engineering Corp.*, 299 F.3d at 1346 (Fed. Cir. 2002); *Graco, Inc.*, 60 F.3d at 791. As explained above, Plaintiff bears the burden of proving infringement. Thus, even if Plaintiff incorrectly believes that Defendants cannot assert non-infringement or invalidity, Plaintiff must still satisfy its burden of proving that the accused products meet each and every element of the construed claims of the patents-in-suit. That is the subject of claim construction, expert review and analysis, and a jury trial.

## II. PLAINTIFF HAS NOT SET FORTH OR ESTABLISHED THE ELEMENTS FOR BREACH OF CONTRACT

Plaintiff's attempt to convince this Court to find in its favor for breach of contract is similarly baseless. To recover on a breach of contract theory, a Plaintiff must establish all of the

---

[6] This argument, of course, can only be made if the License Agreement remains in force. Plaintiff's assertion of this clause thus further supports Defendants' position above that the ongoing License Agreement precludes any claim of patent infringement.

[7] Kenall misreads the import of this provision as it is intended to prevent Cooper from alleging invalidity, etc. in an effort to avoid royalty payments or obviate the license. Plaintiff's reading that Defendants cannot defend against baseless claims of infringement is unsupported.

following: (1) the existence of a valid contract, (2) performance by plaintiff, (3) breach of contract by the defendant, and (4) resultant injury to the plaintiff. *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d 1155, 1159 (Ill. Ct. App. 2016). Defendants expressly denied in their answer that Plaintiff has performed, that Defendants breached and that there is any injury to Plaintiff. (D.I. 34 at ¶¶ 46-68.) As part of those denials, Defendants further point out that Plaintiff, not Defendants, are the source of this dispute. There is voluminous discovery to be had before any conclusion can be made as to Plaintiff's claim for breach of contract.

A Rule 12(c) finding of breach of contract based on a complaint and answer alone is an exceptional remedy. *Durkin v. Equifax Check Svcs., Inc.*, No. 00 C 4832, 2004 WL 725461, at *2 (N.D. Ill. Mar. 31, 2004). "12(c) is only appropriate in the rare case where the plaintiff actually states that he intends to base his entire argument on the pleadings alone." *Id.* Plaintiff admits in its complaint that it has not met this requirement: it admits that it needs discovery to prove certain elements of its breach of contract claim. (D.I. 1 at ¶¶ 63, 68.) Where there is an unresolved question at the heart of a breach of contract claim, there remains a triable issue of material fact. *Premiere Digital Access, Inc. v. Central Telephone Comp.*, 360 F.Supp.2d 1161, 1164 (D. Nev. Feb. 22, 2005).

At issue in Plaintiff's motions are two categories of Subject Products: Subject Single Product and Subject Continuous Product. With respect to the Subject Single Product, Plaintiff alleges that Defendants continued manufacture and sale after a certain timeframe constitutes breach of contract. As to Subject Continuous Product, Plaintiff alleges that Defendants failed to pay royalties. Plaintiff's claim as to each, however, fails to establish three of the four required factors for breach of contract.

10

*First,* Defendants deny performance by Plaintiff. Specifically, Plaintiff has failed to accept royalty payments for this product, thereby precluding any claim of breach. (D.I. 34 at ¶¶ 50, 53.) *Yale Dev. Co., Inc. v. Oak Park Trust & Savings Bank,* 26 Ill.App.3d 1015, 1020 (Ill. Ct. App. 1975) ("Delays and nonperformance while they amount to a failure to perform are excused where performance is prevented by the other party to the contract.") (internal citation omitted).

*Second*, Defendants deny that this conduct constitutes a breach. The License Agreement provides the Defendants a one-month period to cure any alleged breach after a notice of a breach is sent by Plaintiff. (D.I. 1, Ex A at Ex. 3 ¶ 12.) Plaintiff has not alleged that such notice was provided or that Defendants failed to cure. In fact, the parties have been engaged in a nearly two-year letter campaign on this issue, and Defendants believe they have cured. (D.I. 34 at ¶ 51.). The facts ultimately will show that Plaintiff failed to timely notify Defendants, that Defendants promptly responded once notified and that Plaintiff took an obstructionist strategy once Defendants sought to address the concern. (*Id.* at ¶¶ 50-51.). As set forth in Defendants' answer, and will be further established through discovery, Defendants cured any alleged breach and Plaintiff's own conduct is to blame for any purported continued dispute. (D.I. 34 at ¶¶ 50, 53.)

*Third*, Plaintiff has not and cannot establish injury. Defendants have attempted to make the corresponding royalty payment, but Plaintiff refused to accept payment. (*Id.* at ¶ 50.) This, of course is another factual issue. Plaintiff's inexcusably waited nearly a decade to claim Defendants are in breach. (D.I. 1 at ¶ 47.) Plaintiff's failure to do so potentially serves as a

11

waiver to its eleventh hour breach of contract allegation.[8] *See Delta Consulting Group, Inc. v R. Randle Construction, Inc*., 554 F.3d 1133 (7th Cir. 2009). This is another factual issue, along with Plaintiff's steps (or lack thereof) to mitigate any alleged damage, that needs to be addressed through discovery, preventing a Rule 12(c) ruling in Plaintiff's favor at this early stage. *See., e.g., R.R. Donnelley & Sons Co. v. Vanguard Transp. Sys., Inc.*, 641 F.Supp.2d 707, 717 (N.D. Ill 2009) (the duty to mitigate damages forbids the victim of a breach of contract, which might well be involuntary, to allow his damages to balloon when he could easily prevent that from happening, as he might be tempted to do in order to force a lucrative settlement.)

Plaintiff's claim as to the alleged Subject Continuous Products is also insufficient to be determined on a Rule 12(c) motion. For starters, Defendants outright deny any breach of contract on this front. (D.I. 34 at ¶¶ 46-68.) Defendants deny that the products at issue are even "Subject Continuous Products." Defendants believe the products fall within the "any other products" scope of the License Grant and are thus royalty-free. As discovery and the evidence will show, the products that Plaintiff now alleges are Subject Continuous Products are ***not*** the same products identified as Exhibits to the License Agreement, but rather use completely different technology.[9] (D.I. 1, Ex A at Ex. 3 ¶¶ 1, 5.) This is a disputed material fact to be addressed

---

[8] Defendants intend to provide further affirmative defenses pursuant to the Court order permitting an amended answer once this Court determines the proper scope of the parties' dispute. (D.I. 67)

[9] The License Agreement related to fluorescent lighting and was limited to a specific product. (D.I. 1, Ex A at Ex. 3, at 1.) The current alleged "Subject Continuous Products" are entirely distinct. The products at issue do not use fluorescent technology at all, but instead incorporate light emitting diode ("LED") technology which was commercially unviable in 2007. Further, LED circuit borads are commercially and functionally different from fluorescent lamps. For instance, fluorescent bulbs are based on a reactive gas that lights up when charged through a ballast, whereas LED circuit boards are not true bulbs but rather semiconductors. As a result, everything from circuit structure, power consumption parameters, thermal considerations and

(footnote cont'd…)

through discovery, both fact and expert. In other words, the products at issue are Licensed Products but not Subject Products and thus not subject to a payment of royalty. Therefore, there is no breach of contract because there is no injury.

In sum, there can be no reasonable dispute that significant factual issues remain unanswered as to Plaintiff's breach of contract claims. Even Plaintiff cannot credibly deny that a disputed issue of fact is likely to arise through discovery or the ordinary course of litigation. Indeed, there are host of factual issues that that need to be addressed before the sought relief can be considered. Defendants have affirmatively stated as much through their answer and denials. As such, Plaintiff's Rule 12(c) motion should be denied and defendants should be permitted to present their positions and defenses.

---

(…cont'd)

optical characteristics are different from the actual Subject Continuous Products identified in Exhibit A.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Rule 12(c) Motions for Judgment Regarding Patent Infringement and Breach of Contract (D.I. 45-55).

Dated:  October 11, 2017

Respectfully Submitted,
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

*/s/ Kal K. Shah*
Kalpesh (Kal) K. Shah
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone:  312.212.4949
Facsimile:  312.757.9192
Email: kshah@beneschlaw.com

*Attorney for Defendants*
*Cooper Lighting, LLC and*
*Eaton Corporation*

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ Kal K. Shah

*Attorney for Defendants*
*Cooper Lighting, LLC and*
*Eaton Corporation*

15