Table of Plaintiff's Cases

| Case[1] | License Terms | Licensee's Conduct |
|---|---|---|
| *Providence Rubber Company v. Goodyear*, 76 U.S. 788, 799-800 (1869) | Licensee was given a "free license to use the said Goodyear's gum-elastic composition for coating cloth for the purpose of japanning, marbling, and variegate japanning, at his own establishment, but not to be disposed of to others for that purpose without the consent of the said Charles Goodyear;…the right and license hereby conferred being limited to the United States, and not extending to any foreign country and not being intended to convey any right to make any contract with the government of the United States." | Licensee manufactured articles for the United States, under contracts with the quartermaster-general. |
| *American Graphophone Co. v. Walcutt*, 87 F. 556, 557 (S.D. N.Y., Jan. 11, 1898) | The license granted "a right to make, but…not to a right to sell." | Licensee sold the product. |
| *Security Materials Co. v. Mixermobile Co.*, 72 F.Supp. 450, 452-6 (S.D. N.Y., June 30, 1947) | The license agreement conferred on the licensee "the exclusive right to sell Mixermobiles throughout the United States, excluding…California." | The licensee sold and used Mixermobiles in California. |

---

[1] Beyond the cases listed in this table, Plaintiff cites *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010), without any direct quotes, for the notion that an "infringement claim where challenged conduct was outside the scope of license." (D.I. 70 at 3, n.2). However, that case is immaterial as "the sole issue presented by this appeal is whether WiAV has constitutional standing to assert" patents to which it has an exclusive license. (*Motorola, Inc.*, 631 F.3d, 1263). Plaintiff also lists *Radware, Ltd. v. F5 Networks, Inc.*, No.5:13-cv-02024-RMW, 2015 WL 6828273 (N.D. Cal. Nov. 6, 2015). That case is entirely unrelated as it is an order from a *Markman* hearing. Furthermore, the cited page and footnote do not exist.

| | | |
|---|---|---|
| *Tessera, Inc. v. Advanced Micro Devices, Inc.,* No. C 05-4063 CW, 2007 WL 3232441, *5 (N.D. Cal. Nov. 1, 2007) | The license agreement restricted "the licensee's use of the applicable patents to certain types of products and applications. Specifically, the ASP Defendants are limited to using the patented technology to produce tape-based packaging products." | Both parties agreed that the accused products were not covered by the license agreement. |
| *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 563-5 (7th Cir. 2003) | The license agreement granted licensee with the right "to (1) modify the CG Option 2.0 source code; (2) generate executable code versions of CG Option 2.0; (3) distribute executable code versions of CG Option 2.0 when integrated with [Media 100]'s Media 100 hardware and software used for digital video editing, and such versions shall be licensed only for use on such hardware." | Licensee used the licensed source code in software other than Media 100. |
| *Chrimar Systems, Inc. v. Alcatel-Lucent Enterprise USA Inc.,* No. 6:15-CV-00163-JDL, 2017 WL 3313731, *3-4 (E.D. Tex., Aug. 3, 2017) | The license had a section on "unlicensed products." This section, in part, described that "[Power over Ethernet] PoE Devices that Accton sells to a Licensee of Chrimar or a company currently in litigation with Chrimar are Unlicensed Products under this Agreement, even if such PoE Devices otherwise meet the definition above for Licensed Accton." The agreement went further to attach as an exhibit, the list of Chrimar's licensees and companies engaged in litigation. | Licensee sold products to a company that was engaged in litigation with Chrimar. That company was specifically listed in the exhibit to the agreement. |

| | | |
|---|---|---|
| *L.E. Waterman Co v. Kline*, 234 F. 891, 893 (4th Cir. 1916) | The license agreement "provided that the licensee may sell the patented pens only in the regular course of business…" | Licensee went bankrupt and a trustee assigned in bankruptcy sold the property.<br><br>*The Court found in this case that the patent holder was not "exempt from the laws of bailment" and was thus not entitled to a return of the product. |
| *American Sulphite Pulp Co. v. Burgess Sulphite Co.*, 2 F.2d 6, 7-8 (1st Cir. 1924) | The license agreement allowed licensee to use the patented technology of the licensor at "ten (10) digesters now erected and in use in its mill at Berlin, N.H., at the present time, or their equivalent in cubical contents." | The licensee expanded the size of some of their digesters while also building new ones.<br><br>*The Court found that defendant did not use the patented technology when upgrading its digesters. |
| *Intel Corp. v. ULSI System Tech., Inc.*, 995 F.2d 1566, 1567-70 (Fed. Cir. 1993) | There was a cross-licensing agreement that granted each party an "irrevocable, retroactive, nonexclusive, world-wide, royalty-free license." | One of the licensees manufactured a product covered under the license agreement for sale in a third party product.<br><br>*The Court found this behavior to be allowed under the license agreement and thus they were immune from infringement. |
| *Jacobsen v. Katzer,* 535 F.3d 1373, 1380-83 (Fed. Cir. 2008) | The Artistic License allowed licensees the "right to copy, modify, and distribute the software: provided that [the user] insert a prominent notice in each changed file stating how and when [the user] changed that file, and provided that [the user] do at least ONE of the following: a) place [the user's] modifications in the Public Domain or otherwise make them Freely Available…b) use the modified Package | Licensee did not comply with any of the four requirements. |

|  |  |  |
|---|---|---|
|  | only within [the user's] corporation or organization. c) rename any non-standard executables so the names do not conflict…or d) make other distribution arrangements with the Copyright Holder." |  |
| *ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 322 F.3d 928 (7th Cir. 2003) | There were a few non-exclusive licenses that allowed all licensees and the licensor to retain sale rights. | The licensee assigned all their rights to a third party.<br><br>* The Court found that this was an acceptable act inside the bounds of the license agreement. |
| *Beasley v. John Wiley & Sons, Inc.,* 56 F.Supp.3d 937 (N.D. Ill. July 21, 2014) | The license agreement allowed for "one time nonexclusive print rights, John Wiley & Sons Inc, Frommer's "Chicago Day by Day" 1st Edition, English language only, up to 46,000 total press run, published May 2006, World rights (defined as: USA plus 10% English language countries), six years. No electronic rights." | The licensee used the pictures in a second edition and in electronic copies. |