UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENALL MANUFACTURING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 4575 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| COOPER LIGHTING, LLC, and EATON | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Kenall Manufacturing Company brought this suit against Cooper Lighting, LLC and

Eaton Corporation (together, "Cooper"), alleging patent infringement and breach of contract.

Doc. 1. The court granted Kenall's unopposed motion under Civil Rule 12(f) to strike Cooper's

affirmative defenses, but gave Cooper leave to file amended affirmative defenses. Doc. 67. The

court then granted in part Cooper's motion for judgment on the pleadings under Civil Rule 12(c),

dismissing Kenall's patent infringement claims except insofar as they pertain to Subject Single

Products that Cooper sold after April 1, 2008. Docs. 86-87 (reported at __ F. Supp. 3d __, 2018

WL 3046935 (N.D. Ill. June 20, 2018)). At the same time, the court denied Kenall's Rule 12(c)

motions for judgment as to liability without prejudice to renewal after Cooper repleaded its

affirmative defenses. *Ibid.*

Cooper filed an amended answer and affirmative defenses, Doc. 93, and Kenall now

moves under Rule 12(f) to strike the affirmative defenses, Doc. 95, and under Rule 12(c) for

partial judgment as to liability, Docs. 98, 101. The Rule 12(f) motion is granted in part and the

Rule 12(c) motions are denied.

**Background**

In resolving Kenall's Rule 12(c) and Rule 12(f) motions, the court assumes the truth of the well-pleaded factual allegations in Cooper's pleadings, though not their legal conclusions, and draws all reasonable inferences in Cooper's favor. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (Clark, J.). The court must also consider "documents attached to the [pleadings], documents that are critical to the [pleadings] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Cooper's opposition briefs, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Cooper as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Cooper is a commercial lighting manufacturer. Doc. 93 at ¶ 20. In February 2005, Cooper launched its Fail-Safe Harmony VR Linear Series lighting fixtures. *Id.* at ¶ 26. On January 10, 2006, Kenall was issued U.S. Patent No. 6,984,055 ("the '055 patent"), which covers a "modular lighting fixture adaptable for being implemented in various shapes and configurations." Doc. 1-2 at 11; Doc. 93 at ¶ 21. The next week, Kenall informed Cooper of its newly issued patent. Doc. 93 at ¶ 27.

Just over a year later, Kenall filed a patent infringement suit against Cooper. *Kenall Mfg. Co. v. Cooper Lighting, Inc.*, No. 07 C 603 (N.D. Ill. filed Jan. 31, 2007). The parties resolved that suit pursuant to a Settlement Agreement that incorporated a Confidential License Agreement. Doc. 1-1; Doc. 93 at ¶ 29. The Settlement Agreement provides: "Subject to full

compliance by Cooper with this Agreement and with the terms of the Confidential License

Agreement, Kenall waives … its claims against Cooper for patent infringement damages with

respect to manufacture and sale occurring before the date of this Agreement … ."  Doc. 1-1 at

p. 3, ¶ 3.  The Settlement Agreement also provides that "[f]ailure by Cooper to meet any

payment or other obligation of the License Agreement shall be deemed a breach of" both

agreements.  *Id*. at p. 3, ¶ 2.

The License Agreement granted Cooper "a worldwide, nonexclusive license" under the

'055 patent and any patents stemming from it (collectively, the "Subject Patents") and "[s]ubject

to the terms, conditions and limitations in th[e] Agreement," to manufacture and sell Cooper's

"Linear Continuous" and "Linear Single" products, which the Agreement refers to as the

"Subject Continuous Products" and "Subject Single Products," respectively, and collectively as

the "Subject Products."  *Id*. at pp. 35-36, § 1.  In return, Cooper agreed to place a patent notice

on every licensed product starting no later than December 31, 2007; to make a one-time payment

of $30,000 within seven days of executing the License Agreement; and to make quarterly royalty

payments of five percent of net sales of the Subject Continuous Products starting on January 1,

2008 and continuing through the expiration of the last Subject Patent.  *Id*. at pp. 37-39, §§ 5.A,

5.B, 9.  Cooper also agreed to redesign its Subject Single Product "to have a one-piece end unit

instead of the current two-piece end unit, such re-designed product being referred to … as the

'Re-Designed Single Product,'" by January 1, 2008.  *Id*. at p. 36, § 2.  If Cooper needed

additional time for the redesign, it could continue to sell the Subject Single Product until April 1,

2008, subject to a five percent royalty.  *Id*. at pp. 36-37, §§ 2, 5.C.

The License Agreement includes a "No Challenge Clause," which provides:

> Cooper does not admit infringement, validity or enforceability of the Subject
> Patents, and reserves all defenses to any allegation of infringement related

thereto; provided, however, that Cooper shall refrain from contesting the
validity, enforceability, or infringement of the Subject Patents in any court of
law or other forum unless Kenall asserts the Subject Patents against Cooper
products other than the Subject Products.

*Id*. at pp. 41-42, § 15.  The Agreement also includes an Illinois choice-of-law provision.  *Id*. at
p. 41, § 14.

After Kenall and Cooper executed the Settlement Agreement, Kenall obtained additional
patents for modular lighting technology stemming from the '055 patent, including U.S. Patent
No. 7,494,241 ("the '241 patent"), issued on February 24, 2009, Doc. 1-4 at 2; Doc. 93 at ¶ 21;
and U.S. Patent No. 8,550,656 ("the '656 patent"), issued on October 8, 2013, Doc. 1-6 at 2;
Doc. 93 at ¶ 21.  The '241 patent was reissued as U.S. Patent No. RE45,563 ("the '563 patent")
on June 16, 2015, Doc. 1-5 at 2; Doc. 93 at ¶ 21; and the '055 patent was reissued as U.S. Patent
No. RE45,591 ("the '591 patent") on June 30, 2015, Doc. 1-3 at 2; Doc. 93 at ¶ 21.

In this suit, Kenall alleges that, beginning in 2008, Cooper breached the License
Agreement by failing to make royalty payments, failing to place the required patent notices on its
products, and failing to redesign the Subject Single Product to have a one-piece end unit.  Doc. 1
at ¶¶ 48-53.  Kenall also alleges that Cooper infringed its patents by continuing to sell Subject
Single Products after April 1, 2008.  Doc. 1 at ¶¶ 48, 71-76; 2018 WL 3046935, at *7 (limiting
Kenall's patent infringement claim to Subject Single Products sold after April 1, 2008).  Kenall
first brought the alleged violations to Cooper's attention in 2015, Doc. 93 at ¶ 96, and filed this
suit in June 2017, Doc. 1.

In its answer, Cooper admits that it "inadvertently continued to sell limited quantities of
the Subject Single Products … until about mid-2016" and that it "initially inadvertently left off"
the required patent notices until it was notified of the issue.  Doc. 93 at ¶¶ 48, 51.  Cooper claims

that it attempted to make royalty payments but that Kenall refused to accept them. *Id*. at ¶¶ 50, 53. Cooper also asserts thirteen affirmative defenses. *Id*. at ¶¶ 89-107.

## Discussion

## I. Motion to Strike Affirmative Defenses

Under Rule 12(f), a court may "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

### A. Noninfringement

The first affirmative defense, directed against Kenall's patent infringement claims, alleges that Cooper has not infringed Kenall's patents. Doc. 93 at ¶ 89 ("Defendants have not infringed, either literally or under the doctrine of equivalents, any valid and enforceable claims of the Subject Patents."). Kenall argues that the License Agreement's No Challenge Clause—which, as noted, provides in part that "Cooper shall refrain from contesting the validity, enforceability, or infringement of the Subject Patents in any court of law or other forum unless Kenall asserts the Subject Patents against Cooper products other than the Subject Products," Doc. 1-1 at pp. 41-42, § 15—prohibits Cooper from raising this defense because Kenall's suit asserts Subject Patents against Subject Products. Doc. 97 at 4. Cooper responds that the No Challenge Clause does not bar its noninfringement defense. Doc. 108 at 7 & n.1; Doc. 109 at 7; Doc. 117 at 7-11.

Cooper does not dispute Kenall's submission that the asserted patents are all Subject Patents, thus forfeiting the point. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss … ."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We

have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … ."). Even setting aside forfeiture, Kenall is correct. As relevant here, the License Agreement defines Subject Patents to include the '055 patent, patents claiming priority to U.S. Application No. 10/156,423, and reissues of those patents. Doc. 1-1 at p. 35. The patent infringement claim that survived Cooper's Rule 12(c) motion asserts the '055, '241, '656, '563, and '591 patents. Doc. 1 at ¶¶ 71, 73, 75. All five are Subject Patents: The '055 patent is named in the License Agreement's definition of "Subject Patents," Doc. 1-1 at p. 35; the '241 and '656 patents claim priority to U.S. Application No. 10/156,423, *see* U.S. Patent No. 7,494,241, at [63]; U.S. Patent No. 8,550,656, at [63]; and the '563 and '591 patents are reissues of the '241 and '055 patents, respectively, *see* U.S. Patent No. RE45,563, at [64]; U.S. Patent No. RE45,591, at [64].

Cooper argues, rather, that the No Challenge Clause does not apply because Kenall asserts the Subject Patents against products other than Subject Products. Doc. 108 at 7 & n.1; Doc. 109 at 7; Doc. 117 at 7-11. As Cooper notes, Doc. 109 at 7, Kenall's patent infringement claim is necessarily directed at unlicensed sales because this court dismissed the claim except as to Subject Single Products that Cooper sold after the license for those products expired on April 1, 2008. 2018 WL 3046935, at *6-7. From this premise, Cooper contends that the License Agreement's definition of "Subject Products" is coextensive with the scope of the license, such that an infringement claim directed at unlicensed sales is, by definition, not directed at Subject Products. Doc. 108 at 7 & n.1; Doc. 109 at 7; Doc. 117 at 7-11.

Cooper's conclusion does not follow from its premise. As defined by the License Agreement, Subject Products comprise two types of objects: Subject Single Products and Subject

Continuous Products. Doc. 1-1 at p. 35. Subject Single Products are defined in turn as Cooper's "8" and 12" Linear Single products shown and/or referred to in the Cooper website documents (eight sheets) and additional photographs (three sheets) attached as Exhibit B" to the Agreement. *Ibid.*; *see id.* at pp. 57-68 (providing specifications for and photos of two Cooper products). Subject Continuous Products are similarly defined as Cooper's "8" and 12" Linear Continuous products shown and/or referred to in … Exhibit A" to the Agreement. *Id.* at p. 35; *see id.* at pp. 43-56 (providing specifications for and photos of three Cooper products). Thus, contrary to Cooper's understanding, the Agreement defines Subject Products in terms of a given product's physical characteristics, not whether it is licensed.

To support its interpretation, Cooper points to the following language in the License Agreement and, in particular, to the fact that it refers to Subject Products in defining the license's scope:

> Subject to the terms, conditions and limitations in this Agreement, Kenall grants Cooper a worldwide, nonexclusive license under the Subject Patents to make, to have made, to use, to have used, to offer for sale, to have offered for sale, to sell, to have sold, to export, to have exported, to import and to have imported the Subject Products and any other products within the scope of the Subject Patents, all such products being referred to herein as "Licensed Products."

*Id.* at p. 36, § 1. Rather than modifying the definition of Subject Products, however, this provision grants Cooper a license authorizing the manufacture, use, export, import, and sale of an already-defined category—the Subject Products. The rest of the Agreement then spells out the details of that license, one being that the license expires as to the Subject Single Products no later than April 1, 2008. Doc. 1-1 at pp. 36-37, §§ 2, 5; 2018 WL 3046935, at *5-6. Thus, under the Agreement's plain terms, products defined as Subject Products do not cease being Subject Products once the license expires; rather, those products continue to be Subject Products whether or not they remain licensed. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp.,*

762 F.3d 673, 679 (7th Cir. 2014) ("Our prime objective [in interpreting a contract under Illinois law] is to effectuate the intent of the parties. We do that by enforcing the contract as the parties have written it, as the plain language of the contract is the best evidence of the parties' intent. We look to the contract as a whole in interpreting its individual terms, adopting an understanding of the language that is natural and reasonable. And … whenever possible we attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous.") (citations omitted); *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (noting that a contract's "language, given its plain and ordinary meaning, is the best indication of the parties' intent," and that "a contract must be construed as a whole, viewing each part in light of the others").

If the definition of Subject Products worked the way Cooper urges, then on April 1, 2008, when the license expired, the "8" and 12" Linear Single products shown and/or referred to in" Exhibit B to the Agreement would have ceased to be Subject Products, putting Cooper and Kenall right back where they started as to those products: Cooper could continue to make and sell them, albeit without a license; Kenall could sue Cooper for patent infringement; and Cooper could respond with the full panoply of patent defenses because Kenall would be "assert[ing] the Subject Patents against Cooper products other than the Subject Products." Doc. 1-1 at pp. 41-42, § 15. Thus, Cooper's reading of the definition of Subject Products would transform the Settlement Agreement, under which it agreed to stop selling certain products after a grace period giving it time to design around Kenall's patents, into an agreement that inexplicably required Cooper to redesign its products while merely delaying the parties' dispute over whether Kenall's patents are valid and infringed by those products. Accordingly, Cooper's interpretation not only conflicts with the Agreement's plain language, but also would lead to nonsensical results. *See*

*Suburban Auto Rebuilders, Inc. v. Associated Title Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (Ill. App. 2009) ("Courts will construe a contract reasonably to avoid absurd results."); *First Bank & Tr. Co. of Ill. v. Vill. of Orland Hills*, 787 N.E.2d 300, 305 (Ill. App. 2003) ("A court will not interpret an agreement in a way that would nullify its provisions or render them meaningless.").

Therefore, Kenall's surviving patent infringement claim asserts Subject Patents against Subject Products, and the No Challenge Clause accordingly applies to this suit. The next question is whether the clause in fact bars Cooper's noninfringement defense.

As noted in the court's earlier opinion, the No Challenge Clause's bar on "contesting … infringement of the Subject Patents" cannot plausibly be read to preclude Cooper from raising *any* defense—such as license—to a patent infringement claim, lest it make the license illusory. 2018 WL 3046935, at *2. But in rejecting that capacious reading of the clause, the court did not reach the narrower question presented here. To thwart the first affirmative defense, Kenall need show only that the clause precludes Cooper from raising one specific defense: "noninfringement" in the sense of Cooper's defense that Kenall's patents do not cover Cooper's products, "either literally or under the doctrine of equivalents." Doc. 93 at ¶ 89; *see* 35 U.S.C. § 282(b) (listing "[n]oninfringement, absence of liability for infringement," "unenforceability," and "[i]nvalidity" as defenses "in any action involving the validity or infringement of a patent"). That is the defense that Kenall says the clause forecloses. Doc. 117 at 15 ("[N]on-infringement in this context means that the patents don't cover the product."); Doc. 113 at 3-6; Doc. 97 at 4. Cooper itself invokes this narrower sense of "infringement" and "noninfringement" by setting out noninfringement as an affirmative defense, Doc. 93 at ¶ 89, and then in its brief by describing "the infringement determination" as "comparing the patent claims as construed by the Court to

the accused product" to determine whether all the elements (or their equivalents) are present in the accused product, Doc. 108 at 6 (emphasis omitted).

Kenall's interpretation of the No Challenge Clause is correct. It is altogether natural, if not expected, that an agreement settling patent litigation would bar future litigation over whether the plaintiff's patents cover the defendant's products—that is, whether the defendant's products infringe the plaintiff's patents. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1364 (Fed. Cir. 2001) (reproducing settlement agreement provisions in which the defendant agreed not to later challenge "the validity or enforceability" of the asserted patents and "waive[d] any argument that the licensed products are not covered by one or more claims of" those patents). True, the term "infringement" can be used broadly to refer to a cause of action brought by a patentee against the seller of an accused product, and not just to the element of an infringement claim requiring that one or more of the patent's claims cover the product. *E.g.*, Doc. 1 at p. 13 ("Count II – Patent Infringement") (capitalization altered); *see Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) (explaining that in a patent infringement suit, "invalidity" is "a defense to liability" rather than "a defense to infringement" because invalidity "can preclude enforcement of a patent against otherwise infringing conduct") (internal quotation marks omitted); *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352-53 (Fed. Cir. 1999) (noting that 35 U.S.C. § 282(b) sets out "noninfringement" and "absence of liability" as "separate categories of defenses"). But as the opposite of "noninfringement," "infringement" takes the narrower meaning of whether the product is covered by the patent. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1358 (Fed. Cir. 2017) (explaining that "an infringement analysis is a two-step process" in which "[t]he court must: (1) determine the scope and meaning of the patent claims asserted; and (2) compare the properly construed claims to the allegedly infringing

device," and referring to those steps as presenting the issues of "claim construction" and "noninfringement").

Context confirms that the No Challenge Clause bars Cooper from contesting "infringement" in the narrow sense invoked in its affirmative defense. First, the clause begins with the phrase "Cooper does not admit infringement, validity or enforceability of the Subject Patents." Doc. 1-1 at p. 41, § 15. Cooper admitted elsewhere in the License Agreement that it sold the Subject Products during the term of at least one of the Subject Patents. *Id*. at p. 36 (admitting sales during 2006 and 2007); *see* U.S. Patent No. 6,984,055 (issued Jan. 10, 2006); 35 U.S.C. § 154(a)(2) (providing that the term of a patent "begin[s] on the date on which the patent issues and end[s] 20 years from the date" of filing of the earliest application to which the patent claims priority). Accordingly, all that was left for Cooper to decline to admit was that the Subject Products were covered by the Subject Patents, which suggests that the clause's first use of "infringement" takes the narrow meaning implicating only that issue.

Second, while the No Challenge Clause next "reserves" for Cooper "all defenses to any allegation of infringement" related to those patents, it then adds "*provided, however*, that Cooper shall refrain from contesting the validity, enforceability, or infringement of the Subject Patents" where, as here, Kenall asserts the Subject Patents against Subject Products. Doc. 1-1 at pp. 41-42, § 15 (emphasis added). The fact that language reserving for Cooper "all defenses to any allegation of infringement" is followed by "provided, however" language barring Cooper from "contesting … infringement" necessarily means that the "infringement" in "contesting … infringement" refers to one of many potential "defenses to any allegation of infringement," and thus that Cooper reserved all but the three identified defenses: invalidity, unenforceability, and noninfringement. True, this interpretation results in "infringement" meaning two different things

11

in the same sentence—first narrow (Cooper does not admit that the Subject Patents cover the Subject Products), then broad (Cooper reserves the right to defend itself if faced with a patent infringement suit), and then back to narrow (if Kenall asserts the Subject Patents against the Subject Products, Cooper will not dispute that the Subject Products are covered by the Subject Patents).  But in doing so, the No Challenge Clause mirrors the Patent Act, which makes "[n]oninfringement" (narrow) one of many defenses to an "infringement" action (broad).  *See* 35 U.S.C. § 282(b) ("The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: (1) Noninfringement, absence of liability for infringement or unenforceability … .").

More importantly, it would not make sense to read "infringement" to mean the same thing all three times it is used in the No Challenge Clause.  If "infringement" bore the narrow meaning throughout, then the "provided, however" provision carved out everything Cooper reserved—and then some—by giving up the defense that the Subject Patents do not cover the Subject Products as well as the defenses of invalidity and unenforceability, even though only the first of those defenses would be reserved.  And if "infringement" bore the broad meaning throughout, then "validity" and "enforceability" would become surplusage because prohibiting Cooper from defending itself against an infringement suit necessarily would prohibit it from doing so by raising invalidity and unenforceability defenses; the "provided, however" provision again would carve out everything Cooper reserved because it cannot raise "defenses" to a patent infringement suit without "contesting" that suit; and the clause would make the license illusory by preventing Cooper from raising the defense of license to "contest[]" an infringement suit.

Finally, the appearance of "validity" and "enforceability" along with "infringement" in the "provided, however" provision confirms that "infringement" in that clause bears a narrow

meaning.  The "commonsense canon of *noscitur a sociis* … counsels that a word is given more precise content by the neighboring words with which it is associated." *CFTC v. Worth Bullion Grp.*, 717 F.3d 545, 550 (7th Cir. 2013) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)).  As the canon teaches, "the fact that several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."  *Id.* at 550-51 (internal quotation marks omitted).  Here, the word "infringement" in the "provided, however" provision appears in a list alongside "validity" and "enforceability," suggesting that "contesting … infringement" is the same kind of thing as contesting validity or enforceability.  Invalidity and unenforceability are defenses to a patent infringement action, and they are often listed alongside a third defense: noninfringement.  *See, e.g.*, 35 U.S.C. § 282(b) (listing "[n]oninfringement," "absence of liability for infringement," "unenforceability," and "[i]nvalidity" as defenses to a patent infringement suit); N.D. Ill. L.P.R. 2.3 (requiring "[e]ach party opposing a claim of patent infringement or asserting invalidity or unenforceability" to serve "Initial Non-Infringement, Unenforceability, and Invalidity Contentions," and providing that "Non-Infringement Contentions shall contain a chart" addressing, "for each identified element in each asserted claim, … whether such element is present literally or under the doctrine of equivalents in each Accused Instrumentality").  The three terms' appearance together thus signals that Cooper's agreement in the "provided, however" portion not to contest infringement is an agreement not to raise a noninfringement defense.

The No Challenge Clause therefore bars Cooper's noninfringement defense—that is, Cooper's defense that the Subject Patents do not cover the Subject Products.  By arguing only that the clause does not bar its defense, Cooper has forfeited any argument that the clause is

unenforceable.  *See Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721.  Accordingly, Kenall's motion to strike the noninfringement defense is granted.

## B.    Invalidity

Cooper's second affirmative defense alleges that "the Subject Patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 1 *et. seq.*, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112, the judicial doctrine of double patenting, and the rules, regulations and laws pertaining thereto."  Doc. 93 at ¶ 90.  Kenall argues that the No Challenge Clause bars this defense, too.  Doc. 97 at 6.  Cooper responds with the same arguments it made as to the noninfringement defense.  Doc. 109 at 6-7.  Those arguments fare no better here, particularly given that contract provisions barring future challenges to patent validity are a well-recognized feature of agreements settling patent litigation.  *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1361-63 (Fed. Cir. 2010) (holding that "[i]n the context of settlement agreements, … clear and unambiguous language barring the right to challenge patent validity in future infringement actions" is enforceable in light of "the strong policy in favor of settlement of litigation"); *Flex-Foot*, 238 F.3d at 1364, 1370 (enforcing a provision in which a settling defendant "agree[d] not to challenge or cause to be challenged, directly or indirectly, the validity" of the asserted patents).  Accordingly, Cooper's invalidity defense is stricken.

## C.    Failure to State a Claim

The third affirmative defense alleges that Kenall's complaint "fails to state a claim for which relief may be granted."  Doc. 93 at ¶¶ 91-92.  That is not an affirmative defense.  *See Elliot v. Mission Tr. Servs., LLC*, 104 F. Supp. 3d 931, 936 n.3 (N.D. Ill. 2015) ("Technically, failure to state a claim is not a defense, although often erroneously pleaded as such as a matter of course."); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir.

2012) (distinguishing between Rule 12(b)(6) motions and affirmative defenses). The third affirmative defense accordingly is stricken.

### D.    Laches

The fourth affirmative defense alleges that Kenall's claims are barred by the laches doctrine. Doc. 93 at ¶ 93. Kenall argues that because it brought its contract and patent infringement claims within the applicable statutes of limitations, laches does not apply. Doc. 97 at 7-8. In the alternative, Kenall argues that Cooper fails to plausibly allege facts supporting two elements of the laches defense: (1) that Kenall unreasonably delayed in asserting its rights; and (2) that Cooper lacked notice that Kenall would do so. *Id*. at 8-9; *see W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 678 (7th Cir. 2015) ("[Laches] has two elements: 'lack of due diligence by the party asserting the claim and prejudice to the opposing party.'") (quoting *Van Milligan v. Bd. of Fire & Police Comm'rs*, 630 N.E.2d 830, 833 (Ill. 1994)); *Clark v. Cuberly* (*In re Marriage of Cuberly*), 481 N.E.2d 830, 832 (Ill. App. 1985) (noting that a defendant asserting laches must prove "lack of knowledge or notice … that the complainant would assert the right on which he bases his suit").

Cooper ignores Kenall's second argument, incorrectly asserting that Kenall "does not contest" whether the defense satisfies governing pleading standards. Doc. 109 at 8. And Cooper neither develops nor cites any authority for its assertion that its "affirmative defense pleads [the] elements [of laches] and provides proper notice of such a claim," *ibid*., thus forfeiting the issue and its laches defense. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). In any event, as to Kenall's first argument, laches is not a defense to a suit filed within the governing statute of limitations that seeks damages on a patent infringement claim or on a contract claim under Illinois law. *See SCA*

*Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017)

("Laches cannot be interposed as a defense against damages where the infringement occurred

within the period prescribed by [the statute of limitations set out in 35 U.S.C. § 286].")); *W. Bend*,

794 F.3d at 678-79 (holding that under Illinois law, laches does not apply to "a breach-of-

contract suit seeking only monetary damages"); *Gen. Auto Serv. Station, LLC v. Garrett*, 50

N.E.3d 1144, 1148 (Ill. App. 2016) (same).  Cooper's laches defense is therefore stricken.

### E.     Unclean Hands

The fifth affirmative defense alleges that Kenall's claims are barred by the unclean hands

doctrine because it "purposefully misled [Cooper] to believe that the Subject Products were

covered under the Settlement Agreement" and "refus[ed] to participate under the terms of the

Settlement Agreement when [Cooper] attempted to correct inadvertent mistakes."  Doc. 93 at

¶ 94.  Kenall argues that the "purposefully misled" allegation "sounds in fraud" and is thus

subject to Rule 9(b)'s heightened pleading standard, that Cooper fails to satisfy Rule 9(b), and

that the "refused to participate" allegation is vague, lacks a factual basis, and is irrelevant.

Doc. 97 at 10.  Because Kenall cites no authority to support its one-sentence challenge to the

"refused to participate" allegation and does not argue that the allegation cannot on its own

support an unclean hands defense, Kenall forfeits the issue and thus its objection to the defense.

*See M.G. Skinner*, 845 F.3d at 321; *G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721.

Kenall's motion to strike the unclean hands defense is therefore denied.

### F.     Equitable Estoppel

The sixth affirmative defense alleges that Kenall's claims are barred by the equitable

estoppel doctrine because Cooper "reasonably relied on the Settlement Agreement for the

parameters of its continued sale of Subject Products," placing it "in a worse position than before

the Settlement Agreement."  Doc. 93 at ¶ 95.  Kenall contends that this defense fails as a matter

of law because Cooper's alleged conduct—infringing Kenall's patents by selling Subject Single Products after the license for those products expired, and breaching the Agreement in certain respects—cannot have been taken in reliance on the Agreement.  Doc. 97 at 11; Doc. 110 at 9.

Kenall's challenge to Cooper's equitable estoppel defense rests on two fundamental legal principles.  The first is that reasonable reliance is an element of the equitable estoppel defense.  *See High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016) ("Three elements must be established for equitable estoppel to bar a patentee's suit: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to *reasonably* infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer *relies* on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.") (emphasis added) (internal quotation marks omitted); *In re Krueger*, 192 F.3d 733, 740-41 (7th Cir. 1999) (listing "a reasonable, good-faith, detrimental change of position by the innocent party based on the misrepresentations" as an element of equitable estoppel under Illinois law) (quoting *Hubble v. O'Connor*, 684 N.E.2d 816, 825 (Ill. App. 1997)); *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001) (noting that one element of equitable estoppel is that "the party claiming estoppel reasonably relied upon the [other party's] representations in good faith to [its] detriment").  The second is that "[a]n affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true."  *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (alterations and internal quotation marks omitted).

Those principles defeat Cooper's equitable estoppel defense, for if Kenall's allegations prove true, Cooper cannot have been acting in reasonable reliance on the Settlement Agreement.  As to the surviving portion of the patent claim, Kenall alleges that the Agreement gave Cooper a

time-limited license to sell Subject Single Products and that Cooper continued selling those products after the license expired on April 1, 2008. Doc. 1 at ¶¶ 37-40, 48, 71-76, 82; 2018 WL 3046935, at *6-7. Cooper cannot reasonably have believed that a license expiring on April 1, 2008 allowed it to continue selling once-licensed products after that date. As to the contract claim, Kenall alleges that Cooper breached the Agreement by failing to carry out its obligations thereunder, such as paying royalties and placing patent markings on its products. Doc. 1 at ¶¶ 48-53. It makes no sense to say that Cooper breached the Agreement in those respects in reasonable reliance on the Agreement.

Cooper's equitable estoppel defense is therefore stricken.

### G.     Waiver

The seventh affirmative defense alleges that Kenall's claims are barred by the waiver doctrine because it (1) waited too long to notify Cooper of the alleged breaches of the Settlement Agreement and (2) "voluntarily waived acceptance" when Cooper "attempted to correct inadvertent mistakes." Doc. 93 at ¶ 96. Kenall argues that the first allegation is implausible given its "undisputed record of enforcement" and that the second is "fatally vague." Doc. 97 at 11-12. Kenall cites no authority to support its position that the seven-year delay between the start of the alleged breaches in 2008 and its efforts to enforce the Agreement beginning in 2015, Doc. 1 at ¶¶ 47-53; Doc. 93 at ¶ 96, cannot support Cooper's waiver defense, thus forfeiting the point. *See M.G. Skinner*, 845 F.3d at 321. Accordingly, even if the waiver defense's second allegation were fatally vague, Kenall cannot show that the defense is "insufficient on the face of the pleadings." *Heller*, 883 F.2d at 1294. Its motion to strike that defense therefore is denied.

### H.     Ratification

The eighth affirmative defense alleges that Kenall's claims are barred by the ratification doctrine because it "acquiesc[ed] to the benefits of the Settlement Agreement while [Cooper

was] allegedly conducting unauthorized sales" and because it "did not repudiate the Settlement Agreement within a reasonable amount of time."  Doc. 93 at ¶ 97.  Kenall argues that this defense is insufficient because its acceptance of the benefits of the parts of the Settlement Agreement to which Cooper adhered does not prevent it from enforcing the rest of the Agreement, and also because it was not required to repudiate the Agreement before suing for breach of contract.  Doc. 97 at 12-13.  In response, Cooper merely restates its position that "Plaintiff ratified the License Agreement by continuing to benefit from it without trying to void it on the supposed breaches they now contend Defendants have committed."  Doc. 109 at 11.

Cooper's response rests on a fundamental misunderstanding of the ratification doctrine's role in a suit for breach of contract.  As relevant here, ratification can prevent a party from accepting the benefits of a voidable contract and then seeking to void the contract.  *See Maksym v. Loesch*, 937 F.2d 1237, 1244 (7th Cir. 1991) (noting that under Illinois law, "accept[ing] the benefits of [a] contract for three years … gives rise to a presumption" of ratification as to "any claim of fraud in the inducement"); *Carlile v. Snap-on Tools*, 648 N.E.2d 317, 324 (Ill. App. 1995) ("A victim of duress who accepts the benefits flowing from the contract for any considerable length of time ratifies the contract."); 1 Richard A. Lord, Williston on Contracts § 1:20 (4th ed. 2018) ("[A] party who has the power of avoidance may extinguish that power by ratification of the contract.").  In other words, ratification is one contractual party's response to the other party's argument that their contract is unenforceable.  Because Kenall is attempting to enforce, not to avoid, the Settlement Agreement, Cooper's ratification defense has no possible application here.  *See Havoco of Am., Ltd. v. Hilco, Inc.*, 731 F.2d 1282, 1290 n.7 (7th Cir. 1984) (noting that an "action for damages is an affirmance or ratification of" a

fraudulently induced contract) (internal quotation marks omitted).  Accordingly, Cooper's
ratification defense is stricken.

## I.      Recoupment or Setoff

The ninth affirmative defense alleges that Kenall's claims are barred by the recoupment
and setoff doctrines because Cooper made royalty payments to Kenall under the License
Agreement.  Doc. 93 at ¶ 98.  As Kenall notes, Doc. 97 at 13; Doc. 110 at 10-11, the fact that
Cooper made some royalty payments is insufficient to allege setoff or recoupment because those
doctrines "involve[] the right of [a] defendant to have the plaintiff's monetary claim reduced by
virtue of a claim by the defendant against the plaintiff."  *N. Tr. Co. v. Peters*, 69 F.3d 123, 135
(7th Cir. 1995) (discussing recoupment); *see Thornton v. Garcini*, 928 N.E.2d 804, 811-12 (Ill.
2010) (noting that, in the sense relevant here, setoff "refer[s] to a situation when the defendant
claims that the plaintiff has done something that results in a reduction in the defendant's
damages") (emphasis omitted).  Cooper's allegation that it paid some or all of what it owes
Kenall is not an allegation that Kenall owes Cooper anything, and thus cannot support a
recoupment or setoff theory.  The recoupment or setoff defense is therefore stricken.

## J.      Failure to Mitigate

The tenth affirmative defense alleges that Kenall failed to mitigate its alleged damages by
waiting "to alert [Cooper] of any potential violation for nearly a decade" and by refusing
Cooper's efforts "to resolve the alleged deficiencies."  Doc. 93 at ¶ 99.  Kenall argues that
Cooper's allegation that Kenall delayed in alerting Cooper of potential violations of the
Settlement Agreement is contradicted by admissions in Cooper's answer.  Doc. 97 at 14.  Kenall
is wrong.  Kenall's complaint alleges breaches of the Settlement Agreement beginning in 2008,
Doc. 1 at ¶¶ 48-53, and its surviving patent claim is for alleged infringement beginning after
April 1, 2008, 2018 WL 3046935, at *7.  The failure to mitigate defense alleges that Kenall did

not bring Cooper's alleged breaches to Cooper's attention until 2015, "nearly a decade" after Kenall says they began. Doc. 93 at ¶¶ 96, 99. Nothing in Cooper's answer contradicts this timeline.

Kenall does not argue that the alleged delay cannot support Cooper's mitigation defense, thus forfeiting the point for purposes of its motion to strike. *See G & S Holdings*, 697 F.3d at 538. Accordingly, Kenall cannot establish that the mitigation defense is "insufficient on the face of the pleadings." *Heller*, 883 F.2d at 1294. The motion to strike that defense is denied.

### K.     Statute of Limitations

The eleventh affirmative defense alleges that any damages arising before June 20, 2007 are barred by the statute of limitations, "including but not limited to" the ten-year statute of limitations for contract suits set out in 735 ILCS 5/13-206. Doc. 93 at ¶ 100. Kenall argues that its contract claim is timely because the parties entered into the Settlement Agreement in July 2007 and it filed this suit less than ten years later, on June 20, 2017. Doc. 97 at 14. Cooper fails to respond, thus forfeiting the point and its statute of limitations defense to the contract claim. *See Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538. Even setting aside forfeiture, Kenall is right on the merits. It follows from the fact that the contract was formed less than ten years before Kenall filed suit, Doc. 1; Doc. 1-1 at 4, that any cause of action for breach of that contract arose within the limitations period. *See* 735 ILCS 5/13-206 (providing in relevant part that "actions on … written contracts … shall be commenced within 10 years next after the cause of action accrued").

As to the patent infringement claim, Cooper argues that its liability for damages arising before June 20, 2007 is limited by the six-year statute of limitations of 35 U.S.C. § 286. Doc. 109 at 8-9. But because Kenall's patent infringement claim is limited to infringement beginning on April 1, 2008, 2018 WL 3046935, at *7, there cannot be any "damages arising

from before June 20, 2007," Doc. 93 at ¶ 100, to which Cooper's defense could apply.  *See* 35

U.S.C. § 286 (defining the limitations period in terms of when infringement was "committed").

Accordingly, Cooper's statute of limitations defense is stricken.

### L.     License

The twelfth affirmative defense, directed at Kenall's patent infringement claim, alleges

that Cooper's infringing activities were licensed by the Settlement Agreement.  Doc. 93 at ¶ 101.

As Kenall correctly argues, Doc. 97 at 15; Doc. 110 at 13, this defense fails given the court's

holding in its earlier opinion that "[a]ll sales of Subject Single Products after April 1, 2008 were

unauthorized and therefore are subject to an infringement claim."  2018 WL 3046935, at *6.

Because Kenall's infringement claim is limited to those unlicensed sales, *id*. at *6-7, license is

not an effective defense.  The license defense is therefore stricken.

### M.     Intervening Rights

The thirteenth affirmative defense, also directed at Kenall's patent infringement claim,

alleges that the doctrines of absolute and equitable intervening rights bar Kenall from collecting

damages for infringement of the '055, '241, '563, and '591 patents.  Doc. 93 at ¶¶ 102-107

(citing 35 U.S.C. § 252).  Specifically, Cooper alleges that: (1) the '055 and '241 patents "cannot

be asserted" because they were reissued as the '591 and '563 patents; (2) Kenall "is not entitled

to damages" for infringement of the reissued patents before their reissue dates because the

reissued patents' claims "are not substantially identical in scope to the original claims," barring

those patents from reaching back to the dates of the original patents; and (3) Kenall "is not

entitled to damages" for infringement of the reissued patents even after their reissue dates

because Cooper had by that time "made substantial preparation with respect to the Subject

Products."  *Ibid*.  Kenall argues that this defense is barred by the No Challenge Clause because it

"contests infringement and enforceability" of the Subject Patents.  Doc. 97 at 15; *see* 35 U.S.C.

§ 252 (defining the scope of intervening rights in terms of whether a "specific thing … infringes a valid claim of the reissued patent which was in the original patent"); *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1388 & n.13 (Fed. Cir. 1983) (citing 35 U.S.C. § 282(1), which lists "[n]oninfringement, absence of liability for infringement, [and] unenforceability" as defenses, for the proposition that "[i]ntervening rights, as provided under 35 U.S.C. § 252, is an affirmative defense that must be raised at trial") (footnote and citation omitted), *overruled in other part by In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).

Cooper's response does not address this argument, and instead rests on the perfunctory assertion—for which it cites no legal authority—that its pleading contains "substantially more detail than required to give notice to [Kenall] of the defense." Doc. 109 at 7. Cooper thus has forfeited the point and therefore its defense. *See M.G. Skinner*, 845 F.3d at 321; *Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538. Accordingly, the intervening rights defense is stricken.

## II.  Motions for Judgment on the Pleadings as to Liability

Kenall seeks judgment on the pleadings as to liability—but not damages—on its breach of contract and patent infringement claims. Kenall's motion implicates the threshold question whether Rule 12(c) permits the entry of judgment on some but not all elements of a single claim—that is, whether it permits piecemeal judgment on part of a claim. It does not.

Although "it is common to apply Rule 12(c) to individual causes of action," *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1022 (N.D. Cal. 2013), Kenall's request for "judgment" on only the liability element of each claim, leaving damages for later, presents a separate and open question. *See Holloway v. Best Buy Co.*, 2009 WL 1533668, at *4 (N.D. Cal. May 28, 2009) ("As to whether a Rule 12(c) motion can be used as a means to parse claims for relief or strike less than an entire count, the case law is not extensive."); *Does I Through III v. District of*

*Columbia*, 238 F. Supp. 2d 212, 221 n.9 (D.D.C. 2002) (declining to "wade into this contested water"); *In re Amica, Inc.*, 130 B.R. 792, 796 (Bankr. N.D. Ill. 1991) ("[F]ew federal courts have addressed the issue … .").  The Seventh Circuit recently flagged but declined to resolve the issue.  *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 324-25 (7th Cir. 2015) (noting that there was "reason to question" the district court's grant of a Rule 12(c) motion "on certain elements of [a] single claim" given that Rule 12(c) motions are governed by the same standards as Rule 12(b)(6) motions, which do not "permit piecemeal dismissals of *parts* of claims").  Citing *BBL*, at least one judge in this District held that "it is procedurally improper … to award judgment on the pleadings on part of a claim."  *Alpha Tech Pet Inc. v. LaGasse, LLC*, 2017 WL 5069946, at *9 (N.D. Ill. Nov. 3, 2017).

Even setting aside *BBL*, the text of the Civil Rules forecloses the entry of a Rule 12(c) judgment on part of a claim.  Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The rule's text does not explicitly authorize courts to carve up claims or defenses on a motion for judgment on the pleadings.  *See* 10A Wright & Miller, Federal Practice & Procedure § 2713 (4th ed. 2018) (noting that "there is no provision in the rules" for "a motion for a partial judgment on the pleadings").  Rule 12(c)'s silence on this point stands in contrast to Rule 56(a), which permits summary judgment on "part of [a] claim or defense."  Fed. R. Civ. P. 56(a).  That the Civil Rules explicitly provide for summary judgment on part of a claim under Rule 56(a) but not for judgment on part of a claim under Rule 12(c) counsels strongly against reading Rule 12(c) to implicitly permit such judgments.  *See BBL*, 809 F.3d at 325 (suggesting that "[s]ummary judgment is different" from Rules 12(b)(6) and 12(c) in part because Rule 56(a) contemplates summary judgment on part of a claim or defense); *Marion Healthcare, LLC v. S.*

*Ill. Healthcare*, 2018 WL 1318054, at *4 (S.D. Ill. Mar. 14, 2018) (declining to resolve the issue, but noting that "one could argue that if the drafters of the rules of civil procedure had wished for Rule 12 to allow for partial judgments, then they would have explicitly indicated as such in the rule's text"); *United States v. 2366 San Pablo Ave.*, 2013 WL 6774082, at *2 (N.D. Cal. Dec. 23, 2013) ("[T]he Supreme Court specifically provided for partial summary judgment on less than an entire cause of action or defense in Rule 56; that it did not do so in Rule 12(c) suggests the same device is not available on a motion for judgment on the pleadings."). This conclusion follows from the venerable principle that "[w]hen a law employs a specific term at one point, and omits it at another, [courts] assume that Congress intended a difference in meaning." *Coleman v. Lab. & Indus. Review Comm'n of Wis.*, 860 F.3d 461, 473 (7th Cir. 2017) (internal quotation marks omitted); *see also Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.").

Kenall responds that because the "part of [a] claim or defense" language in Rule 56(a) was added in 2010 only to clarify what the rule already permitted, the lack of similar language in Rule 12(c) is meaningless. Doc. 119 at 5-7 (citing Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment). This argument fails. While the phrase "part of [a] claim or defense" was introduced to Rule 56(a) in 2010, the pre-amendment Rule 56 also expressly provided, using slightly different language, for plaintiffs and defendants to seek and obtain summary judgment on just part of a claim or defense. *See* Fed. R. Civ. P. 56(a) (2009), *reprinted in* 28 U.S.C. app. at 259 (2009) ("A party claiming relief may move … for summary judgment on all or part of the claim."); Fed. R. Civ. P. 56(b) (2009), *reprinted in* 28 U.S.C. app. at 259 (2009) (same, for defendants); Fed. R. Civ. P. 56(d)(2) (2009), *reprinted in* 28 U.S.C. app. at 260 (2009) ("An

interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.").  And although the language in Rule 56(d)(2) authorizing summary judgment "on liability alone" was deleted in 2010, that was only because it would have been redundant with Rule 56(a)'s new "part of [a] claim or defense" language.  *See* 10B Wright & Miller, *supra*, § 2736 (noting that the 2010 amendment to Rule 56 made former Rule 56(d)(2) "surplusage" because "the revised rule authorizes a summary-judgment motion on a part of a claim or defense, and that necessarily would include the liability question").  In fact, Rule 56 has allowed for summary judgment on part of a claim or defense since the inception of the Civil Rules in 1937.  *See* Fed. R. Civ. P. 56(a) (1937), *reprinted in* 28 U.S.C. § 723c app. at 2643 (1940) ("A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the pleading in answer thereto has been served, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."); Fed. R. Civ. P. 56(b) (1937), *reprinted in* 28 U.S.C. § 723c app. at 2643 (1940) (same, for defendants); Fed. R. Civ. P. 56(c) (1937), *reprinted in* 28 U.S.C. § 723c app. at 2643 (1940) (permitting summary judgment where, "except as to the amount of damages, there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law"); Fed. R. Civ. P. 56(d) (1937), *reprinted in* 28 U.S.C. § 723c app. at 2643 (1940) (providing that in cases where a party moves for summary judgment but "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary," the court "shall … make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy").  Thus, if history teaches anything, it is that Rule 12(c) has always referred to "judgment on the pleadings" without any indication that judgment can be entered on part of a claim or defense, *see*

Fed. R. Civ. P. 12(c) (1937), *reprinted in* 28 U.S.C. § 723c app. at 2617 (1940) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."), while Rule 56 has always expressly provided, albeit in different ways, for summary judgment on part of a claim or defense.

Turning to what Rule 12(c) *does* say, the key term is "judgment." Fed. R. Civ. P. 12(c). Rule 54's treatment of that term sharpens the contrast between Rules 12(c) and 56(a). Rule 54(a) provides in pertinent part: "'Judgment' as used in these rules includes a decree and *any order from which an appeal lies*." Fed. R. Civ. P. 54(a) (emphasis added). This definition reflects "[t]he historic rule in the federal courts," which "has always prohibited piecemeal disposition of litigation and permitted appeals only from final judgments except in those special instances covered by statute." Fed. R. Civ. P. 54 advisory committee's note to 1946 amendment. Rule 54(b) permits the court in cases involving multiple claims or multiple parties to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" where "there is no just reason for delay." Fed. R. Civ. P. 54(b).

No provision in Rule 54 permits a "judgment" on *part* of a claim, which reinforces the conclusion reached above that a court cannot enter "judgment on the pleadings" under Rule 12(c) on only a part of a claim. The same logic would extend to Rule 56 but for its express allowance of summary judgment on "part of [a] claim or defense"—meaning a "summary judgment" that does not qualify as a "judgment" under Rule 54. *See* Fed. R. Civ. P. 56(d) advisory committee's note to 1946 amendment ("[A] partial summary 'judgment' is not a final judgment, and, therefore, … is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case."); 10B Wright & Miller,

*supra*, § 2736 (discussing the history of partial summary judgment on the issue of liability, which was called "interlocutory summary judgment" until the 2010 amendments); *cf. Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, 791 F. Supp. 2d 626, 632 (E.D. Wis. 2011) ("Use of the word 'judgment' [in Rule 56] may be an unfortunate continued use of an inaccurate term, but the intent of the rule is clear."). Rule 12(c)'s silence on the issue thus confirms that it cannot be used to obtain a "judgment" on liability but not damages.

Given all this, it should come as no surprise that most courts to have considered the issue have concluded that Rule 12(c) does not permit "judgment" on part of a claim or defense. *See Alpha Tech Pet*, 2017 WL 5069946, at *9 (citing *BBL*, 809 F.3d at 325); *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2016 WL 4154855, at *2 (N.D. Cal. Aug. 5, 2016) (denying the defendant's Rule 12(c) motion because the defendant's argument demonstrated only that the plaintiffs could not seek a particular type of relief and thus "d[id] not provide a basis upon which a judgment on the merits c[ould] be rendered"); *Living on the Edge, LLC v. Lee*, 2015 WL 12661917, at *4 (C.D. Cal. Aug. 25, 2015) (holding that parties "cannot move for judgment on the pleadings with respect to less than a full cause of action"); *EEOC v. Star Transp., Inc.*, 2014 WL 12736151, at *1-2 (C.D. Ill. Sept. 20, 2014) (holding that Rule 12(c) permits partial judgment on the pleadings as to an entire affirmative defense but not as to paragraphs of the defendant's answer that were "not defenses or claims"); *Bolender v. Carnival Corp.*, 2014 WL 12527190, at *1 (S.D. Fla. Apr. 7, 2014) (denying the defendant's Rule 12(c) motion "seek[ing] an order striking and/or dismissing" certain paragraphs of the complaint because "judgment on the pleadings on something less than an entire cause of action [is] inappropriate"); *2366 San Pablo Ave.*, 2013 WL 6774082, at *2 (holding that Rule 12(c) does not permit judgment on the pleadings "on less than a full cause of action or defense"); *In re Amica*, 130 B.R. at 796 ("Partial

judgment on the pleadings is not possible in federal pleading unless it disposes entirely of one or more counts of the complaint.").

Kenall points to some two dozen cases over the past three decades in which courts granted Rule 12(c) motions as to liability but not damages. Doc. 119 at 2-4. Because hardly any of those cases explicitly address whether Rule 12(c) can be used in that way, their persuasive value is minimal. This court is aware of only two cases in which a court considered the issue and entertained a Rule 12(c) motion on a part of a claim that could not reasonably be construed as an entirely separate claim. *See McLaughlin Transp. Sys., Inc. v. Rubinstein*, 390 F. Supp. 2d 50, 57 (D. Mass. 2005) (holding that a Rule 12(c) motion on a "narrow issue" that amounted to only part of a claim was proper); *Chi-Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352, 357-58 (E.D. Wis. 1976) (holding that a plaintiff's Rule 12(c) motion for judgment as to liability but not damages was proper). The court respectfully disagrees with both cases.

*McLaughlin* addresses the key question in a single sentence: "Although not provided for by statute, a party may properly move for partial judgment on the pleadings to further the policy goal of efficient resolution of actions when there are no material facts in dispute." 390 F. Supp. 2d at 57 (quoting *N. Oakland Voters All. v. City of Oakland*, 1992 WL 367096, at *2 (N.D. Cal. Oct. 6, 1992)). The Northern District of California case quoted by *McLaughlin* relies solely on *Chi-Mil*, contains no further discussion of the issue, and did not even involve a Rule 12(c) motion for partial judgment on the pleadings. *See N. Oakland Voters All.*, 1992 WL 367096, at *1-2, *8 (denying the defendant's "motion for summary judgment and/or judgment on the pleadings" on four issues that would have disposed of full claims, but striking "an additional cause of action" that "may [have been] stated by the complaint").

*Chi-Mil*'s Rule 12(c) holding rests on two arguments that run contrary to the Civil Rules' text and are undercut by subsequent Seventh Circuit authority. First, *Chi-Mil* points to Rule 54(b)'s authorization of a final judgment on "one or more, but fewer than all, claims," Fed. R. Civ. P. 54(b), as "suggestive of [the] conclusion" that Rule 12(c) permits partial judgment on the pleadings. 70 F.R.D. at 357-58. True, Rule 54(b) allows for the common practice of partial judgment as to "individual causes of action," *Larsen*, 917 F. Supp. 2d at 1022, but, as noted above, it applies to *claims*, not *parts of claims*.

Second, *Chi-Mil* "relies on … the interchangeability of Rule 12(c) and Rule 56 motions" to conclude that Rule 56(a)'s provision for summary judgment on a part of a claim impliedly extends to Rule 12(c) motions. 70 F.R.D. at 358. *Chi-Mil* offers no support for the proposition that Rule 12(c) and Rule 56 motions are interchangeable, aside from citing the predecessor to Rule 12(d). *See ibid.* The current Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, [a Rule 12(c)] motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Chi-Mil*, 70 F.R.D. at 358 (discussing a substantively identical provision formerly included in Rule 12(c)). Yet if *Chi-Mil* were right that Rule 12(c) and 56 motions were truly interchangeable, then Rule 12(d) would be pointless—that is, parties would not need to present pertinent material when a court converts a Rule 12(c) motion to a Rule 56 motion if there were no difference between those motions.

Rule 12(d) instead bolsters the conclusion that the textual distinctions between Rules 12(c) and 56 carry meaning. By directing courts to ensure that motions styled as Rule 12(c) motions are considered under the correct rule and that parties are given a chance to

present additional material if a Rule 12(c) motion is converted to a Rule 56 motion, Rule 12(d) conveys that there are genuine differences between those motions. Moreover, the Seventh Circuit has since undercut the notion that Rules 12(c) and 56 are interchangeable. *See BBL*, 809 F.3d at 325 ("Summary judgment is different [from Rules 12(b)(6) and 12(c)]."); *Adams*, 742 F.3d at 727-28 ("A motion for judgment on the pleadings under Rule 12(c) … is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

In three other cases, courts expressly addressed the issue and considered granting partial judgment on the pleadings with respect to a part of a claim, but only where—as with Cooper's Rule 12(c) motion—what the parties called "part" of a claim was in fact a standalone claim. *See Palzer v. Cox Okla. Telcom, LLC*, 2018 WL 3240961, at *2 (N.D. Okla. July 3, 2018) (concluding that a partial judgment on the pleadings that does "not entirely dispose of one or more counts" is appropriate, and noting that the counts at issue "could easily be construed as several separate claims"); *Am. Traffic Sols., Inc. v. Redflex Traffic Sys., Inc.*, 2009 WL 2714017, at *2 (D. Ariz. Aug. 27, 2009) ("Plaintiff argues that this is not a proper motion for judgment on the pleadings because defendants seek judgment on only a portion of its Lanham Act claim. Plaintiff's complaint, however, contains what could be construed as several claims for false advertising based on separate statements by defendants. Accordingly, we will consider defendants' motion for judgment on the pleadings as to certain of these representations."); *Holloway*, 2009 WL 1533668, at *4 ("In light of the purpose of Rule 12(c) motions, … and given that each cause of action in the [complaint] alleges what could be construed as several separate claims, the court finds no reason not to consider Best Buy's motion for judgment on the pleadings as to less than entire causes of action."). To the extent these cases nonetheless conclude that Rule 12(c) permits judgment on only part of a true claim, they are unpersuasive,

grounded largely in the already-rejected arguments from the practice of courts that have not addressed the issue and from the purported similarity between Rules 12(c) and 56. *See Palzer*, 2018 WL 3240961, at *2 (invoking the "analogy to the provisions of Rule 56" and courts' routine consideration of "motions for partial judgment on the pleadings seeking judgment on some, but not all, of [a] plaintiff's claims"); *Holloway*, 2009 WL 1533668, at *4 (similar); *see also Am. Traffic*, 2009 WL 2714017 (emphasizing that the plaintiff's claims "could be construed as several claims," and citing *Chi-Mil* and *Holloway* without further analysis). The only new argument is *Holloway*'s invocation of "the purpose of Rule 12(c) motions," which the court described as "to dispose of cases where the material facts are not in dispute and a *judgment on the merits* can be rendered by looking to the substance of the pleadings and any judicially-noticed facts." 2009 WL 1533668, at *4 (emphasis added). That argument carries no water where, as here, a judgment on the merits cannot be rendered in Kenall's favor without addressing damages as well as liability.

Finally, Kenall invokes Rule 1, which directs courts and parties to "construe[], administer[], and employ[]" the Civil Rules so as "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. One of the ways the Rules pursue these purposes, though, is by setting out different procedures for different stages of litigation. It would not advance the Rules' purposes to read away the distinction between Rules 12(c) and 56 that the Civil Rules have drawn for more than eighty years. *See* 4 Wright & Miller, *supra*, § 1029 ("[A] construction that ignores the plain wording of a rule or fails to view it as part of the total procedural system ultimately may prove to be as detrimental to the system as an arbitrary or rigid construction and, in the end, not further the goal of the just, speedy, and inexpensive determination of every action.") (internal quotation marks omitted).

Rule 12(c) therefore does not permit Kenall to seek judgment solely as to liability on its contract and patent claims. Its Rule 12(c) motions accordingly are denied.

## Conclusion

Kenall's Rule 12(c) motions for partial judgment on the pleadings are denied, and its Rule 12(f) motion to strike Cooper's affirmative defenses is granted in part and denied in part. The Rule 12(f) motion is granted as to Cooper's first (noninfringement), second (invalidity), third (failure to state a claim), fourth (laches), sixth (equitable estoppel), eighth (ratification), ninth (recoupment or setoff), eleventh (statute of limitations), twelfth (license), and thirteenth (intervening rights) affirmative defenses, which are stricken. Given the substantial overlap between the affirmative defenses the court struck previously and those asserted in Cooper's amended answer, the defenses are stricken with prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … ."). In any event, Cooper's opposition brief does not request a chance to replead in the event any affirmative defenses are stricken. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing … in any of our cases suggests that a district court must give leave to amend a complaint where a party does not request it … . To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … ."). Cooper may proceed with its fifth (unclean hands), seventh (waiver), and tenth (failure to mitigate) affirmative defenses.

December 10, 2018

_____

United States District Judge