UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENALL MANUFACTURING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 4575 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| COOPER LIGHTING, LLC, and EATON CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kenall Manufacturing Company brought this suit against Cooper Lighting, LLC and Eaton Corporation (together, "Cooper"), alleging patent infringement and breach of contract in connection with certain of Cooper's lighting products. Doc. 1. The patent infringement claims are directed only against two specific categories of Cooper products defined in the parties' July 2007 Settlement and License Agreements—the Subject Single Products and the Subject Continuous Products, referred to together as the Subject Products. *Id*. at ¶¶ 69-88. In June 2018, the court dismissed the patent infringement claims except for those directed against Subject Single Products that Cooper sold after April 1, 2008. Docs. 86-87 (reported at 338 F. Supp. 3d 841 (N.D. Ill. 2018)). Cooper moves for an order clarifying that the surviving patent infringement claims are limited to those directed against a fixed set of Cooper products identified in the July 2007 Agreements—and not claims against the LED products, which Cooper developed after entering into the Agreements and which, unlike the specific products identified in the Agreements, have LED lamps rather than fluorescent lamps. Doc. 145.

Resolution of this motion turns on whether: (1) as Cooper submits, the term "Subject Single Products" includes only the fixed set of Cooper products identified in the July 2007

1

Agreements; or (2) as Kenall submits, the term also includes Cooper's LED products. The License Agreement defines the term "Subject Single Products" as follows:

> Whereas, Cooper has heretofore engaged in the manufacture and sale of the Cooper Fail-Safe Harmony VR Linear Series products, namely, … (b) its 8" and 12" Linear Single products shown and/or referred to in the Cooper website documents (eight sheets) and additional photographs (three sheets) attached as Exhibit B hereof, such products being referred to herein as the "Subject Single Products" and incorporated herein by reference … .

Doc. 1-1 at p. 35. Exhibit B, in turn, sets forth specifications for two Cooper product families—the "HVL Single 8" Linear Harmony VR 14W-108W Fluorescent" products, and the "HVL Single 12" Linear Harmony VR 28W-216W Fluorescent" products, each available in a variety of configurations identified in the specifications—as well as photos of some of those products. *Id.* at pp. 57-68. Cooper contends that, under this definition, Subject Single Products encompass only the specific products identified in Exhibit B. Doc. 145 at 11-20. Kenall responds that the definition also encompasses Cooper's LED products that, although developed after the Agreement's execution, are classified by Cooper as part of the two product families identified in Exhibit B and that, according to Kenall, "retain[] the essential characteristics of the product[s]" in those product families. Doc. 156 at 3-15.

I. **Judicial Admissions and Forfeiture**

Kenall contends at the outset that Cooper's amended answer, Doc. 93, and brief opposing Kenall's first set of Rule 12(c) motions, Doc. 68; *see* 338 F. Supp. 3d at 851 (denying those motions), make "judicial admissions" that "all the accused products are Subject Products," thus foreclosing Cooper's current position that the accused LED products are not Subject Single Products. Doc. 156 at 3-6. "A judicial admission is a statement … that negates a factual claim that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). "[I]n order to qualify as [a]

2

judicial admission[]," the statement "must be deliberate, clear and unambiguous." *Ibid*. (internal quotation marks omitted). The statements identified by Kenall are not judicial admissions.

First, Kenall points to ¶ 36 of Cooper's amended answer. Doc. 156 at 5-6 & n.1. In response to the complaint's allegation in ¶ 36 that "Kenall has not at any time asserted, and does not now assert, the Subject Patents against Cooper products other than the Subject Products," Cooper answered: "Defendants admit that Kenall has not asserted infringement of the Subject Patents by Defendants other than as set forth in the [earlier lawsuit that led to the Settlement and License Agreements] and its current Complaint." Doc. 93 at ¶ 36. That answer admits that Kenall has not asserted the Subject Patents other than in its two lawsuits, while deferring to the License Agreement's definitions and the complaint's allegations as to whether the complaint asserts the Subject Patents only against Subject Products. *Ibid*. Kenall submits that by making a partial admission without specifically denying the other allegations in ¶ 36 of the complaint, Cooper in fact admitted the remaining allegations, too. Doc. 156 at 5 n.1. Kenall is incorrect.

True enough, Rule 8(b)(6) provides in pertinent part that "[a]n allegation … is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). But Cooper's answer includes a general denial, stating that Cooper "den[ies] each and every allegation contained in the Complaint that was not specifically admitted above." Doc. 93 at p. 25. Accordingly, ¶ 36 of Cooper's answer admits only what it says it admits and nothing else. *See* Fed. R. Civ. P. 8(b)(3) ("A party that does not intend to deny all the allegations must either specifically deny designated allegations or *generally deny all except those specifically admitted*.") (emphasis added). Paragraph 36 of Cooper's answer therefore does not contradict Cooper's current position that LED products are not Subject Single Products. Indeed, Cooper's

answer denies every allegation in the complaint suggesting that the LED products are Subject Single Products. Doc. 93 at ¶¶ 71, 73, 75, 80.

Next, Kenall points to Cooper's Rule 12(c) opposition brief, in which Cooper argued that Kenall "asserts infringement [only] for products covered in the License Agreement" given that ¶ 36 of the complaint alleges that the patent infringement claims are "limited to the Subject Patents and [are] against only Subject Products." Doc. 68 at 5, 7 (citing Doc. 1 at ¶ 36). Cooper's use of Kenall's concession that all the accused products are covered by the License Agreement to defend against Kenall's patent infringement claims does not amount to a deliberate, clear, and unambiguous admission that the Agreement's definition of Subject Single Products includes the LED products. The issue discussed in Cooper's brief was not which products fell into which category, but whether Kenall, by granting Cooper a license, had "relinquished its right to sue Cooper for patent infringement," leaving it with only a contractual remedy for Cooper's alleged breaches of the Agreement. 338 F. Supp. 3d at 845.

Kenall also cites Cooper's original answer—which the amended answer superseded—in arguing that Cooper acknowledged "that there is 'no disput[ing]'" that the LED products are Subject Single Products. Doc. 156 at 5-6 (alteration in original) (citing Doc. 34 at pp. 3-4, which is the redacted version of Doc. 30 at pp. 3-4). The pages of Cooper's original answer cited by Kenall consist of responses to jurisdictional allegations that have nothing to do with the definition of Subject Single Products, and no form of the words "no disput[ing]" appears either there or anywhere else in the answer. Doc. 30 at pp. 3-4, ¶¶ 7-12.

For these reasons, Kenall fails to establish that Cooper made judicial admissions that the LED products are properly characterized as Subject Single Products. Kenall argues in the alternative that Cooper forfeited its position that the LED products are not Subject Single

4

Products by failing to press it in opposing Kenall's Rule 12(f) motion to strike Cooper's affirmative defenses. Doc. 156 at 7-9; *see* Docs. 123-124 (reported at 354 F. Supp. 3d 877 (N.D. Ill. 2018)) (granting in part the motion). But given that Kenall's Rule 12(f) motion did not mention LED products, Doc. 97, and that the court's June 2018 ruling had already limited Kenall's patent infringement claims to those directed against Subject Single Products, 338 F. Supp. 3d at 851, it would not have made sense for Cooper to argue in its Rule 12(f) opposition brief that LED products are not Subject Single Products. Cooper therefore did not forfeit its argument that LED products are not Subject Single Products.

## II. Merits

The License Agreement is governed by Illinois law. 338 F. Supp. 3d at 847; 354 F. Supp. 3d at 882, 884; Doc. 1-1 at p. 41, § 14 (Illinois choice-of-law provision). "The basic rules of contract interpretation under Illinois law are well settled. In construing a contract, the primary objective is to give effect to the intention of the parties." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 689-90 (7th Cir. 2017). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id*. at 690 (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher*, 874 N.E.2d at 58. "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Right Field Rooftops*, 870 F.3d at 690 (quoting *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004)). By contrast, "[i]f the language of the contract is susceptible to more than one meaning, it is ambiguous," and in that event "a court may consider extrinsic evidence to ascertain the parties' intent." *Gallagher*, 874 N.E.2d at 58.

Reading the License Agreement as a whole, Subject Single Products are unambiguously defined as the fixed set of Cooper products specifically identified in Exhibit B, and therefore do not include Cooper's LED products, which Cooper developed after entering into the Agreement. First, the definition itself—which says that Subject Single Products are Cooper's "8" and 12" Linear Single products shown and/or referred to in the Cooper website documents (eight sheets) and additional photographs (three sheets) attached as Exhibit B," Doc. 1-1 at p. 35—and Exhibit B, which contains specification sheets for two Cooper product families and photos of specific products from those families, *id*. at pp. 57-68, make clear that the term "Subject Single Products" encompasses only the specific products identified in the Agreement, not those products plus any others that are similarly marketed and that differ only in ways that, according to Kenall, are "irrelevant [to] both the Settlement/License Agreement and [to] the Subject Patents." Doc. 156 at 10. Put another way, the definition itself plainly conveys that the question whether a given product is a Subject Single Product turns exclusively on whether that product appears in Exhibit B's eleven pages. On Kenall's interpretation, by contrast, answering that question would require determining whether the product *either* appears in Exhibit B *or* is similar to products that appear in Exhibit B in ways relevant to the Subject Patents—a determination that resembles an infringement analysis, and that thus threatens to erode the Agreement's distinction between "the Subject Products," which are the only products targeted by Kenall's patent infringement claims, and "any other products within the scope of the Subject Patents," against which Kenall does not assert its infringement claims, Doc. 1-1 at p. 36, § 1.

The definition's context reinforces the conclusion that Subject Single Products are the products specifically identified in Exhibit B, not an ever-evolving set of similar products. Recall how the definition begins: "Cooper has *heretofore engaged in the manufacture and sale* of the

6

Cooper Fail-Safe Harmony VR Linear Series products, *namely*, (a) … the 'Subject Continuous Products," and (b) … the 'Subject Single Products' … , such Subject Single Products and Subject Continuous Products collectively being referred to herein as the 'Subject Products.'" *Id*. at p. 35 (emphasis added). The ordinary meaning of "namely" is "[b]y name or particular mention; that is to say." *Namely*, Black's Law Dictionary (10th ed. 2014); *see also ibid*. ("The term indicates what is to be included by name."). Accordingly, the Agreement unambiguously conveys that the Subject Single Products (along with the Subject Continuous Products, which are not at issue here) *are* the Cooper Fail-Safe Harmony VR Linear Series products that Cooper *had* manufactured and sold before signing the Agreement in July 2007. It follows that the set of Subject Single Products was fixed at the time of the Agreement; Cooper cannot have "engaged in the manufacture and sale" before July 2007 of products, such as its LED products, that did not yet exist.

Further confirmation comes from the Agreement's provisions giving Cooper until January 1, 2008 to redesign "the Subject Single Product to have a one-piece end unit instead of the current two-piece end unit," and adding that if Cooper needed more time to implement the redesign, it could "continue selling Subject Single Products" through April 1, 2008, subject to a five percent royalty. Doc. 1-1 at pp. 36-37, §§ 2, 5.C. Those provisions reflect an understanding of Subject Single Products as a fixed set of products already on the market, as it is not possible to redesign or to continue to sell products that do not yet exist. It follows that Cooper's LED products cannot possibly be Subject Single Products.

Kenall's arguments to the contrary fail to persuade. First, Kenall contends that LED versions of the specific products identified in Exhibit B should be considered Subject Single Products because "the whole … Agreement is concerned (like the Subject Patents) with the

7

nature of the fixture structure, especially [its] end units," while "[t]he type of lamp [*i.e.*, LED or fluorescent] is completely irrelevant." Doc. 156 at 10. Had the parties intended to define Subject Single Products to include future products with end units equivalent to those used in the products identified in Exhibit B, they could have said so. Indeed, other definitions in the Agreement show that when the parties wanted a definition to encompass future developments, they said so. Doc. 1-1 at p. 35 (defining "Subject Patents" to include U.S. Patent No. 6,984,055 "and any additional existing and future United States and foreign patents and applications … claiming priority to [that patent's parent application], and any parents, divisionals, continuations, continuations-in-part, substitutions, reissues, reexaminations, renewals and extensions of any of the foregoing patents or patent applications"); *id*. at p. 36, § 1 (defining "Licensed Products" as "the Subject Products and any other products within the scope of the Subject Patents"). The fact that the parties did not do so with respect to the definition of Subject Single Products must be given effect. *See Right Field Rooftops*, 870 F.3d at 690 ("When parties to the same contract use … different language to address parallel issues[,] it is reasonable to infer that they intend this language to mean different things.") (alterations and internal quotation marks omitted); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744-46 (7th Cir. 1996) ("If NL had wanted to limit its … obligation to real property contamination, it knew perfectly well how to do so. … NL could have insisted upon the language … it used so consistently [elsewhere in the contract]. Instead, NL agreed to a broad indemnity provision, and it is stuck with that provision."). The court's "prime objective" in interpreting a contract under Illinois law is "to effectuate the intent of the parties," and the way to do that is to "enforc[e] the contract as the parties have written it." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp.*, 762 F.3d 673, 679 (7th Cir. 2014).

8

Second, Kenall argues that because the specification sheets in Exhibit B state that "[s]pecifications and dimensions [are] subject to change without notice," *e.g.*, Doc. 1-1 at p. 60, and because "lamp type" is a specification, *id*. at pp. 60, 64 (capitalization altered), later-developed LED products are "referred to" in Exhibit B in that the change from fluorescent to LED lamps was a change in specifications that the specification sheets contemplated. Doc. 156 at 10-13. Kenall's understanding of what Exhibit B "refer[s] to" is inconsistent with the Agreement's clear language. As discussed above, the Agreement unambiguously defines Subject Single Products as a fixed set of products manufactured and sold by Cooper before July 2007, not a set of products open to future expansion. Kenall's view that the words "referred to" smuggle in innumerable potential changes to specifications and dimensions set forth in Exhibit B cannot be reconciled with the Agreement's treatment of Subject Single Products as a fixed set. *See Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) ("In construing contracts, to determine their intent, it is long established that a construction should be adopted, if possible, … which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other.") (quoting *Coney v. Rockford Life Ins. Co.*, 214 N.E.2d 1, 3 (Ill. App. 1966)); *U.S. Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126, 128 (Ill. App. 2000) ("A strained, forced, unnatural, or unreasonable construction [of a contract], or one which would lead to an absurd result, must not be adopted.").

## Conclusion

Cooper's motion to clarify is granted. In dismissing Kenall's patent infringement claims except as to Subject Single Products that Cooper sold after April 1, 2008, the court used the term "Subject Single Products" as defined in the License Agreement, and the Agreement defines Subject Single Products to include only the fixed set of products specifically identified in

Exhibit B. The definition does not include the LED products, which Cooper developed later, and therefore neither do Kenall's surviving patent infringement claims.

      This holding is the result of the bed that Kenall itself made. As noted at the outset, Kenall limited its patent infringement claims to Cooper's Subject Products. Doc. 1 at ¶¶ 69-88. Kenall did so to give itself a clearer path to prevailing on those claims, as Cooper agreed in the License Agreement that, if Kenall brought an infringement suit against Cooper accusing only the Subject Products, Cooper would not contest the validity or enforceability of Kenall's patents or dispute that the Subject Products infringe Kenall's patents. Doc. 1-1 at pp. 41-42, § 15; 354 F. Supp. 3d at 885-88. Kenall must live with the consequences of that choice.

April 16, 2019

                                                   United States District Judge