UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENALL MANUFACTURING COMPANY,     )
    )
        Plaintiff,     )    17 C 4575
    )
    vs.     )    Judge Gary Feinerman
    )
COOPER LIGHTING, LLC and EATON     )
CORPORATION,     )
    )
        Defendant.     )

**REDACTED MEMORANDUM OPINION AND ORDER**

Kenall Manufacturing Company brought this suit against Cooper Lighting, LLC and

Eaton Corporation (together, "Cooper"), alleging patent infringement and breach of contract in

connection with certain of Cooper's lighting products. Doc. 1. The background of this suit is set

forth in the court's prior opinions, familiarity with which is assumed. Doc. 87 (reported at 338

F. Supp. 3d 841 (N.D. Ill. 2018)); Doc. 124 (reported at 354 F. Supp. 3d 877 (N.D. Ill. 2018));

Doc. 189 (reported at 2019 WL 1620019 (N.D. Ill. Apr. 16, 2019)).

Based on Kenall's Stock Purchase Agreement with Legrand Holding, Inc. (the "Legrand

Agreement"), which Kenall recently produced in discovery, Cooper moves to dismiss the suit

under Civil Rule 12(b)(1) on the ground that Kenall lacks standing and, alternatively, under Civil

Rule 12(b)(6) on the ground that it is not a real party in interest under Rule 17(a) and, as to its

patent infringement claim, that Kenall is not a proper plaintiff under 35 U.S.C. § 281. Doc. 305.

Cooper's motion is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N.*

1

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Kenall's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Kenall as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In considering a factual challenge to subject matter jurisdiction under Rule 12(b)(1), the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted).

The Legrand Agreement was executed in 2018. Doc. 307-2. After conducting an *in camera* review, the court ordered Kenall to disclose to Cooper the portions of the Agreement pertinent to Kenall's continued right to pursue this suit, including provisions addressing ownership of the patents-in-suit and control over the suit. Docs. 236, 250, 299. Kenall does not object to the court's consideration of the Agreement in resolving all aspects of Cooper's motion.

The Agreement transferred ownership of Kenall's shares from James W. Hawkins, Kenall's outgoing CEO, to Legrand. Doc. 307-2 at 8. The Agreement states that



*Id.* at 68-69. The Agreement further provides

████████████████████████████████████████████████

████████████████████████████████ *Id*. at 68.  The Agreement states that

████████████████████████████████████████████████ *Id*.

at 69.  And the Agreement ████████████████████████████

████████████████████ *Ibid*.

Cooper does not identify any provision in the Agreement transferring patent rights—such

as the right to make, use, or sell the inventions covered by the patents-in-suit, to sublicense the

patents, or to initiate infringement suits related to the patents—from Kenall to another person or

entity.  Indeed, the Agreement represents that Kenall "exclusively owns and possesses, free and

clear of all Liens, other than Permitted Liens, all right, title and interest in and to, or has the right

to use pursuant to a valid and enforceable agreement, all Company [Kenall] Intellectual

Property," *id*. at 36, and that in the time since its most recent audited financial statements, "there

has not been … any … transfer, assignment or grant of any license or sublicense of any material

rights under or with respect to any Company [Kenall] Intellectual Property," *id*. at 31-32.

## Discussion

## I.      Article III Standing

Cooper appears to suggest that Kenall lacks Article III standing to bring this suit.  Doc.

307 at 7.  Although Cooper devotes substantial attention to arguing that Kenall is not the real

party in interest under Rule 17(a) and is not a party entitled to sue under the patent laws, it does

not present any separate argument for why Kenall lacks Article III standing.  By not

distinguishing Article III standing, on the one hand, from having a viable claim under a certain

statute—which turns on a statutory standing or zone-of-interests analysis—or being a real party

in interest, on the other, Cooper fails to recognize that those doctrines are distinct and rest on

distinct considerations.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,

128 n.4 (2014) ("'[S]tatutory standing' … does not implicate subject-matter jurisdiction … ."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) (holding that Rules 17(a) and 19 "address party joinder, not federal-court subject-matter jurisdiction"); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction … ."); *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) ("Frank's problem is not standing (in the sense that the complaint does not allege a 'case or controversy' justiciable under Article III) but the identity of the real party in interest."); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) (cautioning against "confus[ing] the requirements of Article III—which establish when a plaintiff may invoke the judicial power—and the requirements of [35 U.S.C.] § 281— which establish when a party may obtain relief under the patent laws").

Article III standing exists so long as the complaint alleges that the defendant injured the plaintiff in some concrete way and seeks a valid form of judicial relief to remedy the injury. *See Morrison*, 649 F.3d at 536 ("Plaintiffs allege that they are victims of a pyramid scheme that saddled them with financial loss, which YTB caused. The judiciary can redress that injury by ordering YTB to pay money to the victims. Nothing more is required for standing."). Consequently, a plaintiff may have Article III standing to seek relief for a defendant's alleged misconduct even if it has no viable statutory or common law right to obtain that relief. For example, if a creditor assigns to a third party a delinquent debt, the creditor no longer possesses the right to enforce the debt, but it still has Article III standing because it was injured by the debtor's nonpayment and its injury could be redressed through money damages. *See Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 733 (6th Cir. 2016) ("Just as White forfeited his

proprietary interest in the check by assigning it to the company, RGI argues Cranpark has done the same with its legal claims. This, however, implicates Rule 17 not Article III.").

The same result obtains here. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████ Kenall alleges that it was injured by Cooper and seeks money damages to redress the injury. Article III requires no more. *See Lone Star Silicon*, 925 F.3d at 1236 (holding that while the plaintiff did "not possess all substantial rights in the asserted patents[,] its allegations still satisf[ied] Article III").

## II.     Ability to Obtain Relief under the Patent Laws

Cooper contends that Kenall can no longer press its patent infringement claims due to the transfer of rights effectuated by the Legrand Agreement. Doc. 307 at 8-15. Properly understood, this is an argument under Rule 12(b)(6) that Kenall no longer has statutory standing or, stated more accurately, that Kenall no longer falls within the zone of interests of the patent laws. *See Lexmark*, 572 U.S. at 128 n.4 (noting that the expression "statutory standing" is "misleading" because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case") (internal quotation marks omitted); *Lone Star Silicon*, 925 F.3d at 1235 ("Motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional.").

"Title 35 allows a 'patentee' to bring a civil action for patent infringement. 35 U.S.C. § 281." *Lone Star Silicon*, 925 F.3d at 1229. "The term patentee includes the original patentee (whether the inventor or original assignee) and 'successors in title.' 35 U.S.C. § 100(d)." *Ibid*. Because "[t]he essential issue regarding the right to sue on a patent is who owns the patent," *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1341 (Fed. Cir. 2006), the original

patentee retains the ability to bring a patent infringement claim unless and until it transfers its rights to the patent-in-suit "under such terms that the license is tantamount to an assignment of the patents to the exclusive licensee." *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361-62 (Fed. Cir. 2010).

In arguing that Kenall lost its ability to sue for patent infringement ████████████ ████████████████████████████████████ Cooper relies almost entirely on cases dealing with the converse, more common, situation: where a patent rights transferee (ordinarily a licensee) sues an alleged infringer, and the court must determine whether the licensee has acquired sufficient rights to sue in its name. *Cf. id.* at 1359 ("Typically, we are confronted with cases in which an exclusive licensee sues an accused infringer, and we must decide whether the licensee has been granted rights sufficient to confer [statutory] standing. This case presents a converse scenario in which the patent owner seeks to bring suit, requiring us to determine whether the patent owner transferred away sufficient rights to divest it of any right to sue."). For instance, Cooper cites *E8 Pharmaceuticals LLC v. Affymetrix, Inc.*, 680 F. Supp. 2d 292, 298 (D. Mass. 2010), for the proposition that "settlement is a critical aspect of litigation" and that a party's obligation to obtain "consent before settling any infringement action" can demonstrate that it lacks the rights sufficient to bring a patent infringement suit. Doc. 307 at 9-11, 14. But *E8 Pharmaceuticals* addresses whether a *licensee's* need to get the *licensor's* consent before settling an infringement suit showed that the *licensor* remained the proper party to sue, and answers that question in the affirmative. *See E8 Pharms.*, 680 F. Supp. at 298-99. *E8 Pharmaceuticals* thus suggests that where authority over infringement litigation is divided between the patent holder and a licensee, the patent holder remains a proper plaintiff in an infringement suit. Here, ████████████████████████████████ Legrand has no

6

authority to unilaterally negotiate and settle this suit without Kenall's consent.  Thus, if cases like *E8 Pharmaceuticals* shed any light, they suggest that Kenall retains the right to sue for infringement.

The key question here is whether Kenall has lost its right to sue for patent infringement—a right it would ordinarily retain as the patent owner—██████████████████████ ████████████████████████████  In determining whether a patent owner, by transferring patent rights, "confer[red] [statutory] standing to sue solely on the licensee[,] … [t]he first step is to determine whether the license is exclusive or nonexclusive," as a licensee has "no right to sue, even by joining the [patent owner], under a nonexclusive license agreement."  *Mann*, 604 F.3d at 1358-60.  That is only the first step, as a "finding that the license was exclusive is necessary, but not in itself sufficient, to find that the licensee" has displaced the patent owner as the proper party to sue.  *Id.* at 1360; *see also*, *e.g.*, *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007) (holding that the plaintiff, to whom certain litigation-related rights were transferred, could not sue for patent infringement because, among other reasons, the patent owner had to "approve the settlement of any suits brought by" the plaintiff); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1192-94 (Fed. Cir. 2007) (holding that where the patent owner provided the plaintiff with "an exclusive license and the right to sue infringers," the plaintiff nonetheless could not sue for infringement where the patentee retained "the right to consent to settlements of litigation"); *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979-80 (Fed. Cir. 2005) (holding that a licensee could not sue for infringement because, among other things, it did "not have the right to settle litigation without the prior written consent from" the patent owner).

Cooper does not dispute that, despite the Legrand Agreement, Kenall continues to own the patents-in-suit, continues to enjoy the exclusive right to practice and enforce them, and

continues to have the right to license them. Nor does Cooper argue that Legrand ████████ is a licensee of the patents-in-suit, let alone an exclusive licensee. It necessarily follows that Kenall's transfer to Legrand ████████ of some patent-related rights—as noted, rights concerning only the conduct and fruits of this suit—did not deprive Kenall of its ability to bring the suit's patent infringement claims. *See Lone Star*, 925 F.3d at 1227-34 (holding that the patent owner had not assigned the patent-in-suit or transferred all substantial rights to the plaintiff despite contract language purporting to completely assign the patent where the purported assignee "agreed to only assert the covered patents against … specifically listed" entities, the patent owner could "prevent [the assignee] from assigning the patents or allowing them to enter the public domain," the patent owner "and its customers [could] … continue to practice the patents," and the assignee had to share patent revenue with the patent owner); *Mann*, 604 F.3d at 1361-62 (holding that patent owner retained the ability to sue even where the exclusive licensee had a limited "right … to grant sublicenses," "the absolute right to decide whether or not to initiate litigation against [an] accused infringer," and the right to "complete control" over such litigation, but where the patent owner retained the right to litigate in the event the licensee chose not to exercise its right).

## III.    Real Party in Interest

Finally, Cooper argues that the Legrand Agreement divested Kenall of its status as a real party in interest under Rule 17(a). Doc. 307 at 14-15. Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The key consideration under Rule 17(a) is not "who will ultimately benefit from the recovery," but who, "by the substantive law, possesses the right sought to be enforced." *Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 764 (7th Cir. 1986) (internal quotation marks omitted); *see also RK Co.*

8

*v. See*, 622 F.3d 846, 850 (7th Cir. 2010) (holding that the real party in interest is "the person who possesses the right or interest to be enforced through litigation").

Cooper identifies nothing in the Agreement that deprives Kenall of its Rule 17(a) real-party-in-interest status for its contract claims. Doc. 307 at 15. And because, as shown above, Kenall has the right to sue for patent infringement, "by the substantive law, [it] possesses the right sought to be enforced" and therefore satisfies Rule 17(a) for purposes of its patent infringement claims. *Life of Mid-Am.*, 805 F.2d at 764 (internal quotation marks omitted). That another ▓▓▓▓▓▓▓ entity (Legrand) might benefit from Kenall's recovery or have some limited control or oversight over this suit does not mean that Kenall has assigned its contract or patent infringement claims and thereby lost its real-party-in-interest status. *See ibid*. ("The real party in interest is … not necessarily the person who will ultimately benefit from the recovery.") (internal quotation mark omitted); *Appvion, Inc. v. P.H. Glatfelter Co.*, 2015 WL 2374514, at *2 (E.D. Wis. May 15, 2015) ("The right to control litigation is not the right to institute litigation in one's own name. Similarly, the right to receive proceeds from a lawsuit does not mean the party has usurped another as a real party in interest.").

## Conclusion

Cooper's motion to dismiss is denied. Before concluding, the court notes that Cooper, without expressly invoking the applicable rules, appeared to suggest at the hearing on its motion that, even if Kenall is *a* proper plaintiff, ▓▓▓▓▓▓▓ Legrand are indispensable parties under Rule 19 and therefore that dismissal is warranted under Rule 12(b)(7) if they were not joined as party plaintiffs. *Cf. Mann*, 504 F.3d at 1359 ("[W]e have held that, where an exclusive license transfers less than 'all substantial rights' in the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an

indispensable party who must be joined."). But Cooper's briefs do not mention Rules 12(b)(7) or 19, and only its reply brief makes an oblique reference to the principles embodied therein. Doc. 339 at 6 ("If Kenall is permitted to continue alone, Legrand could feasibly challenge any outcome based on the contract, subjecting Defendants to potential litigation of the matter in its entirety. Kenall's approach and Legrand's absence indisputably leave this matter without proper footing … ."). Cooper has accordingly forfeited any argument for dismissal under Rule 12(b)(7). *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). Cooper did expressly refer at the hearing and in its reply brief to Rule 17(a)(3)'s requirement that the court allow a reasonable time for the real party in interest to be joined if there otherwise would be a "failure to prosecute in the name of the real party in interest." Fed. R. Civ. P. 17(a)(3); *see* Doc. 339 at 6. But because Cooper has not shown that Kenall is not a real party in interest, Rule 17(a)(3) is not triggered here.

July 7, 2020

_____

United States District Judge