UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENALL MANUFACTURING COMPANY, | |
| Plaintiff, | No. 17 CV 4575 |
| v. | Judge Thomas M. Durkin |
| COOPER LIGHTING, LLC and EATON CORPORATION, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Kenall sued Defendants (collectively, "Cooper") for breach of contract and patent infringement. R. 1. On March 14, 2024, the Court granted in part and denied in part the parties' cross-motions for summary judgment. R. 674. Kenall now moves for partial reconsideration as to (1) whether Cooper breached the parties' contract by selling "Subject Single Products" after April 1, 2008, and (2) whether Kenall failed to mitigate damages. R. 676. For the reasons stated below, Kenall's motion is granted in part and denied in part.

**Legal Standard**

Motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir.1996) (citation omitted). They are proper where the Court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990) (citations omitted).

1

## Background[1]

Kenall and Cooper are competing commercial lighting manufacturers. R. 674 at 1. In 2007, Kenall sued Cooper alleging that Cooper's lighting products infringed Kenall's patents. *Id.* at 2. The parties resolved that suit pursuant to a Settlement Agreement and Confidential License Agreement (together, "Agreement"). *Id.* The Agreement granted Cooper "a worldwide, nonexclusive license" under Kenall's "Subject Patents" to sell Cooper's "Subject Single Products" and "Subject Continuous Products." *Id.* The license to sell Subject Single Products expired on April 1, 2008. *See* R. 1-1 at 36 § 2. And the license to sell Subject Continuous Products continued until expiration of the last-to-expire of the Subject Patents. *See id.* at 37 § 5(B).

The Agreement required that Cooper "keep complete and accurate books and records sufficient to ascertain and verify the Net Sales of Licensed Products subject to royalty payments" and "within thirty (30) days after the end of each calendar-year quarter [to] provide to Kenall a written report indicating Net Sales of Licensed Products . . . or that there were no sales." *Id.* at 38, § 7. The first written report was due by approximately April 1, 2008. *See id.* Cooper then owed quarterly royalty payments on Subject Continuous Products sold during the license period, with the first quarterly payment due by approximately April 1, 2008, and a one-time royalty payment due May 1, 2008 on Subject Single Products sold during the license period. *See id.* at 37, § 5.

---

[1] The Court provided more extensive background in its memorandum opinion and order at R. 674.

Cooper failed to provide written reports, failed to make royalty payments, and continued to sell Subject Single Products after expiration of the license period. R. 674 at 6, 13. After signing the Agreement, the parties did not communicate again until Kenall sent Cooper a letter on July 23, 2015 stating that Cooper was selling Subject Single Products in violation of the Agreement. R. 540 ¶ 27; R. 544-18. Kenall then sent a follow-up letter on September 10, 2015, and for the first time, inquired into the missing royalty payments. R. 540 ¶ 28; R. 510-5. Kenall filed this lawsuit in 2017, alleging breach of contract and patent infringement. R. 1. The parties cross-moved for summary judgment which the Court granted in part and denied in part. R. 674. Kenall now moves for partial reconsideration of that decision. R. 676.

## Analysis

### I. Breach of Contract

In ruling on the parties' cross-motions for summary judgment, the Court found that Kenall could pursue a patent infringement claim for Subject Single Products sold by Cooper after April 1 but not a breach of contract claim. R. 674 at 5–9. Kenall argues that the Court erred by denying the breach of contract claim. R. 677 at 4–10.

In addressing this issue, the Court begins with the plain language of the Agreement. In relevant part, the Agreement states:

> By January 1, 2008, Cooper shall re-design the Subject Single Product to have a one-piece end unit instead of the current two-piece end unit, such re-designed product being referred to herein as the "Re-Designed Single Product." . . . If Cooper needs additional time to complete such re-design, Cooper may continue selling Subject Single Products for the period January 1, 2008 through April 1, 2008 . . . subject to a running royalty for sales beginning January 1, 2008 as set forth below.

3

R. 1-1 at 36, § 2. Based on the language that "Cooper may continue selling Subject Single Products . . . through April 1, 2008," the Court finds that Cooper's license expired on April 1 and that the parties intended for Cooper to stop selling the products upon expiration of the license. Critically, however, the Agreement did not expressly address how to treat the sale of the products after April 1. And selling a patented product without a license is patent infringement, not a breach of contract. In other words, the Agreement did not establish that the sale of Subject Single Products after April 1 was in violation of Kenall's contract rights, rather than just Kenall's patent rights. As the Court stated on summary judgment: "For Kenall to bring a breach of contract claim on this issue, the Court would need to find an implied negative covenant in the Agreement that prohibits Cooper from selling the Subject Single Products after April 1, 2008." R. 674 at 7.

In resolving this question on summary judgment, the Court relied on *B & J Mfg. Co. v. Hennessy Indus., Inc.*, 493 F. Supp. 1105 (N.D. Ill. 1979), *aff'd* 663 F.2d 1075 (7th Cir. 1981). In *Hennessy*, the licensing agreement lacked an express provision prohibiting the defendant from manufacturing and selling certain kits and the issue was whether the defendant had breached the agreement by doing so. 493 F. Supp. at 1131. The court noted that negative covenants should only be implied into agreements where "absolutely necessary to effectuate the intention of the parties." *Id.* at 1132 (citations omitted). Finally, the court found that even if the parties had intended to prohibit the defendant from manufacturing and selling the kits, an implied negative covenant barring the manufacture and sale of the kits was not

4

"absolutely necessary" to effectuate this intent because the plaintiff could rely on "a patent infringement suit to protect [its] rights." *Id*. The *Hennessy* court thus declined to imply a negative covenant.

*Hennessy* is exactly on point. In this case, the Agreement failed to expressly address the sale of Subject Single Products after April 1, 2008. Yet Kenall could (and did) rely on a patent infringement claim to seek damages against Cooper from such sales. Applying *Hennessy* on summary judgment, the Court found that because Kenall could pursue a patent infringement claim, an implied negative covenant barring the sale of Subject Single Products after April 1 was not "absolutely necessary" to effectuate the parties' intent. R. 674 at 7–9.

In its motion to reconsider, Kenall argues that the Court's finding was inconsistent with opinions issued in this case prior to summary judgment. R. 677 at 4–6. This case was originally before Judge Feinerman, who discussed this issue extensively in multiple written opinions. Consistent with the Court's finding on summary judgment, Judge Feinerman found that "[n]o single provision in the License Agreement expressly obligated Cooper to cease selling the Subject Single Products by April 1, 2008, but reading the Agreement as a whole, it is clear that the license for those products expired on that date." R. 87 at 12. He found that the sale of Subject Single Products after April 1, 2008 violated Kenall's *patent rights. See* R. 87 at 13 (citations omitted) ("In selling Subject Single Products after [April 1], Cooper invaded the ungranted part of the patent . . . [a]ll sales of Subject Single Products after April 1, 2008 were unauthorized and therefore subject to an infringement claim."). But he

5

never found, however, that the sale of Subject Single Products after April 1 violated Kenall's *contract rights. See, e.g.*, R. 124 at 5–14 (addressing patent infringement but not breach of contract). Kenall points out that Judge Feinerman allowed discovery on the contract claim. R. 677 at 5. But this is not dispositive and not a ruling on the merits as to whether a breach of contract claims should survive summary judgment. Indeed, parties often conduct discovery on claims that are later dismissed at summary judgment.

Kenall also argues that the infringement claim is not a viable alternative to the contract claim because the Patent Act allows just six years of damages back to June 2011, while the contract claim dates to April 2008. R. 677 at 8. This argument fares better. As to this limited period, for the sale of Subject Single Products from April 2008 through June 2011, Kenall's only avenue for recovery would be a breach of contract action stemming from an implied negative covenant barring the sale of the Subject Single Products. The Court thus finds on reconsideration that for the limited period from April 2008 through June 2011, an implied negative covenant is necessary to effectuate the parties' intent. Kenall may seek damages on Subject Single Products sold by Cooper from April 2008 through June 2011 under a breach contract claim and Kenall may seek damages on Subject Single Products sold by Cooper following June 2011 under a patent infringement claim.[2]

---

[2] To the extent the parties dispute the method for damages calculations from April 2008 through June 2011, the parties may raise that issue in their pre-trial motions.

## II. Failure to Mitigate

In ruling on the parties' cross-motions for summary judgment, the Court found that Kenall was not entitled to recover interest on late royalty payments because Kenall had failed to mitigate those damages. R. 674 at 12–16. Kenall argues that this finding was a manifest error. R. 677 at 10–15. Kenall's argument fails for the reasons discussed below.

As stated in the Court's summary judgment ruling, an injured party must "exercise reasonable diligence and ordinary care in attempting to minimize the damages after injury has been inflicted." *St. George Chicago, Inc. v. George J. Murges & Assocs., Ltd.*, 695 N.E.2d 503, 509 (Ill. App. Ct. 1998) (internal citations omitted). Where an injured party "permits his loss to be unnecessarily enhanced, the increased loss will be borne by the injured party." *Id.* In other words, a plaintiff may not recover for "consequences of defendant's act which were readily avoidable by plaintiff." *Mayster v. Santacruz*, 163 N.E.3d 246, 256 (Ill. App. Ct. 2020) (citing *Kelly v. Chicago Park Dist.*, 98 N.E.2d 738, 742 (Ill. 1951)). And applied here, the facts in this case are a quintessential example of failure to mitigate. Cooper breached the Agreement on April 1, 2008 by failing to provide Kenall with the first written report. Cooper than continued to breach the Agreement every three months for more than seven years by missing every deadline to submit the reports. Meanwhile, Kenall sat idly without requesting the reports until 2015. By this inaction, Kenall allowed the interest payments to unnecessarily balloon.

7

Kenall raises several counterarguments. First, Kenall argues that it had no duty to mitigate under *Straits Financial* and *Continental Concrete Pipe* which held that "the duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts which make the duty to mitigate necessary." *Straits Financial LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 375 (7th Cir. 2018) (citing *Continental Concrete Pipe Corp. v. Century Rd. Builders, Inc.*, 552 N.E.2d 1032, 1042 (Ill. App. Ct. 1990)). *Straits Financial* dealt with a case of fraud, and the Seventh Circuit explained that "fraud victims are expected to take reasonable action once they are made aware of the real situation." 900 F.3d at 375. *Continental Concrete Pipe* dealt with a latent product defect, and the court explained that the injured party did not have a duty to mitigate until after the product had failed a test. 552 N.E.2d at 1042. Here, Cooper was required to provide written reports but failed to do so. This failure should have been obvious to Kenall. Kenall is thus foreclosed from arguing that it had no duty to mitigate because it was unaware of the breach.

Second, Kenall argues that "the most reasonable assumption for Kenall to make from the non-reporting of sales" was that Cooper "had no sales to report." R. 677 at 12. This is not a reasonable assumption because Cooper was still obligated under the Agreement to submit written reports even if there had been "no sales." R. 1-1 at 38, § 7. Cooper's failure to provide written reports was a breach of the Agreement and thus constituted an injury. Once the injury occurred, Kenall was required to act with reasonable diligence (for example, by simply requesting the reports) to mitigate damages.

8

Third, Kenall argues that it was "unaware" that Cooper had continued selling the Subject Single Products and that it "would not be a reasonable or just standard of law" to require a party "to expend resources to seek information about [a] theoretically *possible* breach or injury." R. 677 at 13. But Kenall's factual awareness or unawareness of the continued sales is irrelevant. Kenall failed to mitigate because it failed to exercise reasonable diligence in response to the obvious breach caused by the missing written reports, not the sale of Subject Single Products.

Finally, Kenall argues that the Court made an improper inference against Kenall: "The inherent inference against Kenall is that Kenall would have timely obtained all reports and royalties due if it had asked Cooper for them before 2015." R. 677 at 15. Kenall contends that "even if Kenall *had* followed up Cooper's non-reporting starting in 2008 with immediate demands for reports, Cooper would not have provided full and accurate reports or payments." *Id.* But what Cooper may or may not have done in such a situation is speculation and irrelevant. The Court can only reach conclusions based on the undisputed facts in the record. And the undisputed facts show that Cooper breached the Agreement starting April 1, 2008, and that Kenall waited over seven years to respond.

For the reasons stated above, the Court did not manifestly err and Kenall's motion to reconsider is denied as to this issue.

## Conclusion

For the foregoing reasons, Kenall's motion to reconsider is granted in part and denied in part.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 2, 2024